UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PETER J. CRESCI,

                                    Plaintiff,

v.                                                          6:14-CV-1172
                                                            (GTS/TWD)

MOHAWK VALLEY COMMUNITY COLLEGE;
KIMBERLY EVANS-DAME, Individually; and
JANE DOES 1-4, Individually,

                                    Defendants.
_____

APPEARANCES:                                    OF COUNSEL:

PETER J. CRESCI
   Plaintiff, *pro se*
Cresci Law Firm, LLC
830 Avenue A, Suite 1
Bayonne, NJ 07002

OFFICE OF FRANK W. MILLER                    CHARLES C. SPAGNOLI, ESQ.
6575 Kirkville Road
East Syracuse, NY 13057

**THÉRÈSE WILEY DANCKS, United States Magistrate Judge**

## ORDER AND REPORT-RECOMMENDATION

## I.    INTRODUCTION

*Pro se* attorney Plaintiff Peter J. Cresci commenced this civil rights action under 42

U.S.C. § 1983 against Mohawk Valley Community College ("MVCC"), Kimberly Evans-Dame

("Evans-Dame"), and John Does 1-4 on September 24, 2014.  (Dkt. No. 1.)  In his original

complaint, Plaintiff asserted claims against Defendants for: (1) discrimination in violation of the

United States Employment and Reemployment Rights Act of 1994, 38 U.S.C. §§ 4301-4333

("USSERA"); (2) retaliation in violation of USSERA; and (3) retaliation under the First and

Fourteenth Amendments in violation of § 1983.  (Dkt. No. 1 at ¶¶ 21-33.[1])  Plaintiff alleged in his § 1983 retaliation claim that Defendants had prevented him from being selected for any position at MVCC in retaliation for his having spoken publicly and at times criticized unidentified employer's actions, filed Freedom of Information Law ("FOIL") requests, and filed civil rights actions on behalf of his clients.  *Id*. at ¶ 28.

By Decision and Order dated September 11, 2015, the Hon. Glenn T. Suddaby, Chief U.S. District Judge, dismissed Plaintiff's § 1983 retaliation claim with prejudice for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), and his USSERA violation and retaliation claims for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). *See Cresci v. Mohawk Valley Cmty Coll.*, No. 6:14-CV-1172 (GTS/TWD), 2015 WL 13037477 (N.D.N.Y. Sept. 11, 2015).[2]

Plaintiff appealed to the Second Circuit.  (Dkt. No. 16.)  The Second Circuit affirmed in part and reversed and remanded in part the District Court's Decision and Order.  *Cresci v. Mohawk Valley Cmty Coll.*, 693 F. App'x. 21 (2d Cir. 2017).  The Second Circuit held the District Court had correctly determined it lacked subject matter jurisdiction over Plaintiff's USERRA claims.  *Cresci*, 693 F. App'x. at 22 n.1.  The Court found the District Court had correctly determined Plaintiff had failed to allege facts from which the court could infer Defendants were aware of any protected speech, and that his cover letter and resume provided insufficient support for his allegation that Defendants knew of any protected speech.  *Id.* at 24.

---

[1] Paragraph numbers are used where documents identified by the CM/ECF docket number contain consecutively numbered paragraphs.

[2] Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam)

The Second Circuit also determined Plaintiff's complaint did not plausibly allege he was rejected for the positions because of his FOIL request.  *Id.*

The Second Circuit concluded, however, that the District Court had erred in denying Plaintiff leave to amend his complaint and reversed and remanded on that ground. [3]  *Id.* at 24-25. Plaintiff has now moved for leave to file an amended complaint.  (Dkt. No. 24.)  For reasons explained herein, the Court recommends that the motion to amend be denied without further leave to amend. [4]

## II.   FACTUAL ALLEGATIONS IN PLAINTIFF'S PROPOSED AMENDED COMPLAINT

Plaintiff's has reasserted his § 1983 retaliation claim in his proposed amended complaint adding some factual detail.[5]  (Dkt. No. 24-1.)  Plaintiff has also alleged a new § 1983 claim for

---

[3] The District Court denied Plaintiff's request for leave to file an amended complaint because: (1) Plaintiff had been aware of asserted deficiencies in his claims since October 21, 2014, when Defendants' motion was filed, but had not filed a proposed amended complaint to correct the deficiencies; (2) Plaintiff was admitted to practice before the district court and had certified that he had read and understood the Local Rules of Practice, but had not bothered to specifically identify what his proposed amendments would be, leading the District Court to find that Plaintiff possessed a dilatory motive; (3) granting leave to file an amended complaint would result in undue prejudice to Defendants because the action had been pending since September 24, 2014, and was based on events occurring as far back as 2012; and (4) the futility of the amendment was supported by the fact that Plaintiff's otherwise-detailed opposition papers were conspicuously devoid of factual allegations correcting the factual deficiencies he identified.  *Cresci*, 2015 WL 13037477 at *9.

[4] The issue of whether the denial of a motion to amend on futility grounds is considered dispositive or non-dispositive under 28 U.S.C. § 636(b) is not clearly settled in this circuit. *See Bradley v. City of New York*, No. 14 CV 4289 (NGG) (RML)  2016 WL 1491017, at *1 n.1 (E.D.N.Y. March 16, 2016); *see also Louis v. Metro. Transit Auth.*, No. 12 CV 6333 (ILG) (JO), 2014 WL 5311455 at *1 (E.D.N.Y. Oct. 16, 2014) (noting the Second Circuit has referred to a motion to amend as non-dispositive but has not explicitly decided the issue, and that district courts in the circuit have suggested a magistrate judge's denial of a motion to amend should be treated as dispositive, while a grant of the same motion should be treated as non-dispositive). The Court, because of its finding that the motion to amend should be denied as futile and judgment entered in Defendants' favor, has treated the motion as dispositive.

[5] Plaintiff has also alleged violations of 42 U.S.C. §§ 1981, 1985, and 1988.  42 U.S.C.

violation of his Fourteenth Amendment right to due process.  Plaintiff has made the following

factual allegations.

Between August 2012 and October 2013, Plaintiff applied for various positions at

MVCC.  (Dkt. No. 24-1 at ¶¶ 9, 22-23.)  Plaintiff applied for the Employee Relations Director

position on August 29, 2012, and was invited for an interview on September 6, 2012.  *Id*. at ¶ 9.

Plaintiff  met individually with Screening Committee Chair Frisbee ("Frisbee"), the Screening

Committee, Evans-Dame, and MVCC President VanWagoner ("VanWagoner").  *Id.* at ¶ 11.

Plaintiff alleges Frisbee told him the screening committee was very impressed and invited

Plaintiff to participate in an open forum on September 27, 2012, which Plaintiff was told by

Frisbee was a last step reserved only for finalists.  *Id*. at ¶ 16.  Plaintiff alleges Frisbee told him

afterwards the open forum had gone very well and Plaintiff was well received.  *Id.* at ¶ 18.

According to Plaintiff, an MVCC Board member told Plaintiff he had done a great job at the

open forum, and she was looking forward to his employment.  *Id*.  Frisbee allegedly told Plaintiff

that "the Committee had recommended Plaintiff, the Open Forum Comments were very positive,

and that the appropriate decision would be made by the selection official, Defendant Evans-

Dame."  *Id*.

---

§ 1981 applies to discrimination based on race and alienage.  *See Anderson v. Conboy*, 156 F.3d
167 (2d Cir. 1998).  Plaintiff has not alleged discrimination based on race or alienage.  42 U.S.C.
§ 1985(3) applies to conspiracies that are motivated by "some racial or perhaps otherwise class-
based, invidious discriminatory animus behind the conspirator's action."  *Mian v. Donaldon,
Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993).  Plaintiff has failed to allege
facts showing racial or class-based invidious discriminatory animus.  42 U.S.C. § 1988 "does not
enjoy the independent stature of an 'Act of Congress providing for the protection of civil rights,'
28 U.S.C. § 1343(4).  Rather, as is plain on the face of the statute, the section is intended to
complement the various acts which do create federal causes of action for the violation of federal
civil rights."  *Moor v. Cty of Alameda*, 411 U.S. 693, 702 (1973).

Plaintiff alleges that at his meeting with Evans-Dame on September 6, 2012, she inquired as to "Plaintiff's military duty and work at West Point, United States Military Academy for which Plaintiff was on Staff & Faculty as approved by the United States Senate; . . . asked had Plaintiff been deployed in combat, and Plaintiff's citations which included service during the Gulf War. Evans-Dame inquired about Plaintiff's shaved head and the intimidating effect it had." *Id*. at ¶ 11. Plaintiff also alleges he "noticed [Evans-Dame] was nervous, and very obsessive with Plaintiff's military background, government experience, demeanor, bearing, and the types of supervisory experience Plaintiff possessed." *Id*. at ¶ 12.

According to Plaintiff, Evans-Dame also asked him about his Title IX litigation experience involving colleges, unfair labor practices and negotiation of collective bargaining agreements, and civil rights litigation engaged in by Plaintiff on behalf of employees. (Dkt. No. 24-1 at ¶ 12.) Plaintiff claims they discussed "the aspect of favoring employees over employers and how Plaintiff decided which types of cases to take," with Plaintiff responding that "he had worked for federal agencies and municipal agencies, and getting the experience protecting Plaintiff's civil rights gave Plaintiff a holistic approach for Employee Relations." *Id*.

When Plaintiff met with VanWagoner following his meeting with Evans-Dame, VanWagoner "specifically stated that Defendant Evans-Dame was nervous and fearful about hiring an Employee Relations Director of Plaintiff's experience with unions and civil rights litigation." *Id*. at ¶ 13. Plaintiff and VanWagoner discussed the various types of litigation Plaintiff had been involved in including not only ULPs, Union Negotiations, Title IX compliance, but the compliance with civil rights, Rehabilitation Act, ADEA, and New York Human Rights Laws. *Id*.

After several weeks of waiting to hear of MVCC Board approval on hiring for the position, Plaintiff became suspicious that the hiring process had come to a halt after a previously expedited process. *Id*. at ¶¶ 18, 19. On November 6, 2012, Frisbee wrote to Plaintiff letting him know that "[i]t is anticipated that the selected candidate will be forwarded for Board approval when they meet in a couple of weeks. Since the Committee work is complete, further updates will come from Kim [Evans-Dame] directly." *Id*. at ¶ 19. Plaintiff alleges he called Frisbee after receiving the letter and was told Evans-Dame had modified the selection process so that Plaintiff could not be selected. *Id*. Plaintiff claims Evans-Dame had changed deadlines and engaged in a separate selection process so she could recruit and hire another person for the position. *Id.* at ¶ 20. Plaintiff was not selected for the Employee Relations Director position. (Dkt. No. 24-1 at ¶ 20.) The individual allegedly recruited by Evans-Dame had previous experience in human resources but, according to Plaintiff, lacked public institution and civil service experience and experience working at institutions of higher learning. *Id*. at ¶ 21.

Plaintiff applied for other positions at MVCC including Executive Director of Organizational Development and Vice President of Administration in February 2013 and Employee Relations Director in October 2013. *Id. at* ¶ 22. He was not selected to interview for those positions. *Id*. at ¶¶ 22, 23. Plaintiff alleges he filed FOIL requests regarding the positions and received a response on June 4, 2013. *Id.*

The Employee Relations Director position was re-advertised on October 15, 2013, after the qualifications were revised on October 11, 2013. (Dkt. No. 24-1 at ¶ 23.) Plaintiff applied for this position and thereafter received a notice that "the position will not be filled at this time." *Id.* Plaintiff filed a FOIL request regarding this position. *Id.* Plaintiff informed MVCC Board members and Frisbee that Defendant Evans-Dame was "manipulating" the selection process after

he was again not selected for the Employee Relations Director position.  *Id.* ¶ 25.  Plaintiff

alleges that Evans-Dame's selection process irregularities failed to follow directives for

evaluating and ranking candidates.  *Id.*

## III.    LEGAL STANDARD FOR AMENDMENT OF A COMPLAINT

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides courts "should freely give

leave [to amend a complaint] when justice so requires."  Fed. R. Civ. P. 15(a)(2); *Foman v.*

*Davis*, 371 U.S. 178, 182 (1962); *see also Manson v. Stacescu*, 11 F.3d 1127, 1133 (2d Cir.

1993).  Elaborating on this standard, the Supreme Court has explained:

> In the absence of any apparent or declared reason – such as undue
> delay, bad faith or dilatory motive on the part of the movant,
> repeated failure to cure deficiencies by amendments previously
> allowed, undue prejudice to the opposing party by virtue of
> allowance of the amendment, futility of amendment, etc. – the leave
> sought should . . . be freely given.

*Foman*, 371 U.S. at 182; *accord Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir.

2001) ("[Leave to amend] should not be denied unless there is evidence of undue delay, bad

faith, undue prejudice to the non-movant, or futility.").

A court measures futility under the same standard as a motion to dismiss under Rule

12(b)(6) of the Federal Rules of Civil Procedure.  *Nettis v. Levitt*, 241 F.3d 186, 194 n.4 (2d Cir.

2001), *overruled on other grounds by Slayton v. Am. Express Co.*, 460 F.3d 215 (2d Cir. 2006);

*Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991), *abrogated on other grounds,*

*by Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993).

In assessing futility, the Court must assume the truth of factual allegations set forth in the

proposed amended pleadings.  *Max Impact, LLC v. Sherwood Group, Inc.*,  No. 09 Civ. 902

(LM) (HBP), 2012 WL 3831535, at *2 (S.D.N.Y. Aug. 16, 2012) (collecting cases).  "Although

the Court must assume the truth of all factual allegations in the complaint, '[t]hreadbare recitals

of the elements of a cause of action, supported by mere conclusory statements,' are not entitled

to the assumption of truth and are insufficient to withstand a motion to dismiss." *Lynch v.

Ackley*, No. 3:12cv537 (MPS), 2013 WL 6732540 at *3 (D. Conn. Dec. 19, 2013) (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

      A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure

12(b)(6) on the ground the complaint fails to state a claim upon which relief can be granted.  In

order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a

short and plain statement of the claim showing the pleader is entitled to relief."  Fed. R. Civ. P.

8(a)(2).  The requirement that a plaintiff "show" he or she is entitled to relief means a complaint

"must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

*plausible* on its face.'"  *Iqbal*, 556 U.S. at 678 (emphasis added) (quoting *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 570 (2007)).  "Determining whether a complaint states a plausible claim

for relief . . . requires . . . the court to draw on its judicial experience and common sense. . . .

[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to

relief."  *Id.* at 679 (internal citation and punctuation omitted).  "The issue to consider is not

whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to

support the claims."  *Grief v. Wilson, Elser, Moskowitz, Edelman & Dicker, LLP*, 217 F. Supp.

2d 336, 338 (E.D.N.Y. 2002) (citing *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d

Cir. 1995)).

      Under Local Rule 7.1, a proposed amended complaint "must be a complete pleading,

which will supersede the original pleading in all respects.  A party shall not incorporate any

portion of its prior pleading into the proposed amended pleading by reference."  N.D.N.Y. L.R.

7.1(a)(4).  Further, the motion must "identify the amendments in the proposed pleading, either through the submission of a red-line version of the original pleading or other equivalent means." *Id.*[6]

## IV.    ANALYSIS

### A.      42 U.S.C. § 1983

Plaintiff seeks relief for violation of his constitutional rights pursuant to 42 U.S.C. § 1983, which "provides a cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498,508 (1990) (quoting 42 U.S.C. § 1983); *see also Myers v. Wollowitz*, No. 95-CV-272 (TJM/RWS), 1995 WL 236245, at 2* (N.D.N.Y. Apr. 10, 1995) (stating that "[§ 1983] is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights.").

"Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).  The personal involvement of a defendant is a prerequisite for the assessment of liability in a § 1983 action, *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d. Cir. 1977), and the doctrine of *respondeat superior* is inapplicable to these claims.  *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981); *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d. Cir. 1973).  Thus, a plaintiff must demonstrate "a tangible connection between the acts of the defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

---

[6] Plaintiff has failed to comply with L.R. 7.1(a)(4) despite the District Court's June 26, 2017, text order specifically reminding him of the requirements of the rule.  (Dkt. No. 23.)  The Court will address Plaintiff's motion to amend the complaint despite his failure to comply with L.R. 7.1(a)(4).

### B.    First Amendment Retaliation and Freedom of Association Claims

In his proposed amended complaint, Plaintiff alleges Defendants prevented him from being selected for any position at MVCC in retaliation for his involvement in opposing violations of civil rights, indicating and exercising his rights to fair and open government, and participating in civil rights cases.  (Dkt. No. 24-1 at ¶¶ 28-31.)  Plaintiff also appears to allege First Amendment retaliation and free association claims related to his discussion with the MVCC Board, Frisbee, and VanWagoner regarding the alleged manipulation of the selection process by Evans-Dame in violation of state statutory guidelines and administrative regulations.[7]  *Id*. at ¶¶ 25, 34-37.

Defendants have opposed Plaintiff's motion to amend, arguing the proposed amendments are futile.  (Dkt. No. 26 at 1.[8])  Defendants contend Plaintiff's conduct did not amount to speech by him for purposes of the First Amendment.  *Id.* at 8.  Defendants also claim that Plaintiff has not adequately alleged speech on matters of public concern.  *Id.* at 9-10.  Defendants assert that even if Plaintiff has alleged speech by himself on matters of public concern, his allegations do not suggest a retaliatory motive.  *Id.* at 11.

Applicants for government employment are protected by the First Amendment.  *See African Trade & Information Center, Inc. v. Abromaitis*, 294 F.3d 355, 364 (2d Cir. 2002).  To state a First Amendment retaliation claim, a plaintiff must allege "(1) his speech addressed a

---

[7]  Plaintiff has not reasserted his First Amendment FOIL claim in his proposed amended complaint.  To have done so would have been futile in light of the Second Circuit finding that it was "implausible that MVCC's decision makers, who had rejected [Plaintiff] a few months earlier before he made a FOIL demand, were now rejecting him because of his intervening FOIL demand."  *Cresci*, 693 F. App'x at 24.

[8] Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

matter of public concern, (2) he suffered an adverse employment decision, and (3) a causal

connection exists between his speech and that adverse employment decision, so that it can be

said that the plaintiff's speech was a motivating factor in the adverse employment action." *See*

*Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-87 (1977); *Cotarelo v.*

*Village of Sleepy Hollow Police Department,* 460 F.3d 247, 251 (2d Cir. 2006) (causal

connection between speech and an adverse employment action "must be sufficient to warrant the

inference that the protected speech was a substantial motivating factor in the adverse

employment action.")

 Central to the inquiry into whether certain speech enjoys protected status under the First

Amendment is whether the speech may "be fairly characterized as constituting speech on a

matter of public concern" *Connick v. Myers*, 461 U.S. 138, 148 n.7 (1983). "Speech involves

matters of public concern 'when it can be fairly considered as relating to any matter of political,

social, or other concern to the community, or when it is a subject of legitimate news interest;

that is, a subject of general interest and of value and concern to the public.'" *Lane v. Franks*,

___ U.S. ___, 134 S.Ct. 2369, 2380 (2014) (quoting *Snyder v. Phelps*, 562 U.S. 443, 453

(2011)). Adverse employment actions include discharge, refusal to hire, refusal to promote,

demotion, reduction in pay, and reprimand. *See Kaluczky v. City of White Plains*, 57 F.3d 202,

208 (2d Cir. 1995) (citing *Rutan v. Republican Party*, 497 U.S. 62, 75 (1990)). In order to

satisfy the "causal connection" requirement, the causal connection must be sufficient to warrant

the interference that the protected speech was a substantial motivating factor in the adverse

employment action. *See Mount Healthy City* 429 U.S. at 287; *see also Wrobel v. Cty. of Erie*,

692 F.3d 22, 32 (2d Cir. 2012) ("[I]t is only intuitive that for protected conduct to be a

substantial or motivating factor in a decision, the decision makers must be aware of the protected conduct." (internal quotation marks omitted)).

### 1.     First Amendment Retaliation Claim

Plaintiff alleges that Defendants, in declining on several occasions to hire him, acted in part in retaliation for his demonstrable opposition to civil rights violations and filing hundreds of lawsuits citing opposition to unlawful practices of civil rights, Title IX violations, and other unlawful employment practices. (Dkt. No. 24-1 at ¶ 29.) Plaintiff further alleges that Defendants had developed and fostered a policy and custom discouraging applicants and employees from publicly discussing any matter that would cast employers, government, and especially MVCC in a negative light. *Id*. at ¶ 30.

Defendants contend Plaintiff's First Amendment claim is futile because he has not alleged conduct amounting to speech, has not adequately alleged speech on matters of public concern, and the allegations in the amended complaint do not plausibly suggest retaliatory motive. (*See generally* Dkt. No. 26.) Both the District Court and the Second Court declined to determine whether Plaintiff's involvement in civil rights, Title IX, and employment litigation was a form of protected speech. *See Cresci,* 693 F. App'x. at 21; Dkt. No. 14. The courts assumed, for the purposes of this lawsuit, that the involvement was a protected form of speech, even though this point of law is "at best uncertain." *Id.* Based upon the position taken by the District Court and Second Circuit, this Court will assume, despite the acknowledged uncertainty of the law and solely for purposes of this decision, that filing civil rights claims on behalf of others can in at least some circumstances constitute protected public speech or conduct.

Even assuming Plaintiff's litigation on behalf of others could be found to constitute protected public speech, Plaintiff's proposed amended complaint fails to allege facts plausibly

showing that the protected speech was of public concern. *See Connick*, 461 U.S. at 147.

Plaintiff has alleged in conclusory fashion in his proposed amended complaint that his "actions

and statements involved matters of political, social, or other concern and are constitutionally

protected under the First and Fourteenth Amendments." (Dkt. No. 24-1 at ¶ 28.) In addition, he

has included allegations regarding Evans-Dame questioning him as to his Title IX litigation

involving a number of educational institutions; unfair labor practices and collective bargaining

agreements he had negotiated; and civil rights litigation in which he had represented employees.

*Id*. at ¶ 12. Plaintiff has also alleged that he discussed the types of litigation he had been

involved in as a lawyer, including ULPs, Union Negotiations, Title IX compliance,

Rehabilitation Act, ADEA, and New York Human Rights Law. *Id.* at ¶ 13.

While Plaintiff's proposed amended complaint does include a broad description of the

categories of litigation in which he was involved as counsel, it is, as Defendants point out (Dkt.

No. 26 at 10), devoid of specific factual allegations regarding the issues involved in any of the

litigation that are necessary to make a plausible showing that Plaintiff was engaged in public

speech upon matters of public concern, rather than matters of individual treatment and concern.

*See City of San Diego, Cal. v. Roe*, 543 U.S. 77, 83-84 (2004) ("Public concern . . . is a subject

of general interest and of value and concern to the public at the time of publication."); *Ruotolo v.

City of New York*, 514 F.3d 184, 189 (2d Cir. 2008) ("The heart of the matter is whether the

employee's speech was 'calculated to redress personal grievances or whether it had a broader

public purpose.'") (quoting *Lewis v. Cowen*, 165 F.3d 154, 163 (2d Cir. 1999)); *see also

Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993) (while complaints implicating

system wide discrimination would have "unquestionably involved a matter of public concern[,]"

for purposes of a First Amendment employment retaliation claim, individual sexual harassment

and gender discrimination claims did not); *Spring v. County of Monroe, N.Y.*, 103 F. Supp. 3d

361, 365 (W.D.N.Y. 2015) (employee's speech confined to individualized work related matters

rather than expansive issues failed to qualify as protected speech even when the individual's

employment lies in the health care field, a matter in which the public has substantial interest);

*Johnson v. Orr*, 617 F.Supp. 170 (E.D. Cal. 1985), *aff'd*, 787 F.2d 597 (9th Cir. 1986) (Air Force

reserve officer discharged after sending letter to commanding officer declaring her

homosexuality was found not to have been discharged in violation of her First Amendment right

to free speech because her letter was a matter personal to herself and not a communication or

advocacy of a citizen upon matters of public concern).

The Court also finds Plaintiff has again failed to allege facts plausibly showing a causal

connection between his speech and the adverse employment decisions as is required to plausibly

state a First Amendment retaliation claim.  In their Rule 12(b)(6) motion for dismissal of

Plaintiff's original complaint, Defendants argued that Plaintiff had failed to allege facts showing

the who, what, where, and why of the civil rights litigation in which he had been involved and

had thereby failed to plausibly show that Defendants were aware of the nature of any alleged

"speech" related to the litigation.  (Dkt. No. 5-1 at 7.)  In his opposition, Plaintiff argued that

Defendants became aware of his civil rights litigation from his cover letter and the litigation

work listed on his resume submitted when he applied for the position of Employee Relations

Director.  (Dkt. No. 7 at 7-8.)

The Second Circuit, finding that "the resume include[ed] only general references to the

numerous areas of litigation in which [Plaintiff] represented he had practiced," determined the

District Court had not erred in concluding Plaintiff's resume and cover letter provided

insufficient support for his allegation that Defendants knew of any protected speech.  *Cresci,* 693

14

F. App'x. at 24.  In his proposed amended complaint, Plaintiff has added factual allegations

regarding his conversation with Evans-Dame on September 6, 2014.  (Dkt. No. 24-1 at ¶¶ 11-

12.)  However, the allegations still deal largely with Evans-Dames inquiries regarding his

military service, including Plaintiff's shaved head and the intimidating effect it had, and

Plaintiff's observation that she was "very nervous, and very obsessive with [his] military

background, government experience, demeanor, bearing, and other types of supervisory

experience he possessed."  *Id*. at ¶ 12.

While Plaintiff alleges that Evans-Dame asked him about his civil rights litigation and

Title IX litigation regarding colleges, as well as his experience with unfair labor practices, and

collective bargaining agreements, the proposed amended complaint is still devoid of any

allegations plausibly showing that Evans-Dame was provided with information that would likely

cause her concern, or from which she could reasonably conclude that the "speech" had involved

matters of public concern protected by the First Amendment.  *Id*. at ¶ 12.  Moreover, Plaintiff's

allegation that he and Evans-Dame discussed the aspect of favoring employees over employers

and how Plaintiff decided which type of cases he decided to take does not reveal discussion of

any protected speech, or give Plaintiff any reason to believe his litigation experience would be a

material factor in her decision.  *Id*.

Plaintiff has alleged that VanWagoner told him Evans-Dame was "nervous and fearful

about hiring an Employee Relations Director of Plaintiff's experience with unions and civil

rights litigation."  *Id*. at ¶ 13.  Plaintiff has also alleged he and VanWagoner discussed various

types of litigations in which Plaintiff was involved including ULPs, Union Negotiations, Title IX

compliance, compliance with civil rights, Rehabilitation Act, ADEA, and New York Human

Rights Laws.  *Id*.  However, neither VanWagoner's comment regarding Evans-Dame nor his

discussion of Plaintiff's legal work in the civil rights area shows any disclosure or discussion of speech protected under the First Amendment.

As noted above, in order to state a claim for First Amendment retaliation in employment, Plaintiff's proposed amended complaint must allege specific facts which plausibly show a causal connection between protected speech and an adverse employment action sufficient to warrant the inference that the protected speech "was a substantial motivating factor in the adverse employment action." *Cotarelo,* 460 F.3d at 251. The Court finds that Plaintiff's retaliation claim in his proposed amended complaint, instead of alleging specific facts, is based upon his subjective feelings and perception that MVCC's decision not to employ him resulted from his representation of plaintiffs in civil rights and employment related litigation. "[A] plaintiff's subjective feelings concerning his employer's actions are insufficient to establish the 'adverse action' necessary to support a First Amendment retaliation claim." *Islamic Society of Fire Dept. Personnel v. City of New York,* 205 F. Supp. 2d 75, 85, 87 ((E.D.N.Y. 2002); *see also Brodt v. City of New York*, 4 F. Supp. 3d 562, 568 (S.D.N.Y. 2014) (in reviewing the sufficiency of a complaint's allegations, a plaintiff's "feelings and perceptions of being discriminated against are not evidence of discrimination.") (quoting *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999)); *Williams v. Wellness Medical Care, P.C.*, No. 11-CV-5566 (KMK), 2013 WL 5420985, at *6 (S.D.N.Y. Sept. 27, 2013) ("without sufficient facts, even the most sincerely held beliefs [of employment discrimination] do not comprise a sufficient basis for withstanding a 12(b)(6) attack.")

Based upon the foregoing, the Court finds that Plaintiff has again failed to state a § 1983 claim for violation of his First Amendment right to free speech in retaliation for representing Plaintiff's in civil rights and employment related litigation, and that amendment would be futile.[9]

2.    First Amendment Freedom of Association Claim

Plaintiff appears to have attempted to allege First Amendment freedom of association claims with regard to both his involvement as an attorney in plaintiff's civil rights and employment litigation and with regard to his communications with the MVCC Board, VanWagoner, and Frisbee concerning Evans-Dames alleged manipulation of the selection process to prevent Plaintiff from being selected for the positions for which he applied.  (Dkt. No. 24-1 at ¶¶ 34-37.)  Plaintiff alleges that the Defendants deprived him of the First Amendment right to freedom of association which, according to Plaintiff, "protects citizens who protect those that lack the ability to protect themselves from the violation of laws whether by their employer or University or College . . . and protects public citizens from the actions and inactions detrimental to citizens by government officials."  *Id.* at ¶ 35.

Plaintiff's First Amendment freedom of association claim must with regard to his litigation activities must, as with his retaliation claim, satisfy the threshold requirement that the conduct at issue relate to a matter of public concern.  *See Cobb v. Pozzi*, 363 F.3d 89, 102-03 (2d Cir. 2004).  The Court has concluded Plaintiff has failed to allege facts plausibly showing that his civil rights related litigation involved matters of public concern.  Plaintiff must also allege

---

[9] The Court has elected not to consider the Evans-Dame affidavit and internet articles regarding improprieties by Plaintiff which Evans-Dame states were factors in her decision to recommend against hiring Plaintiff which were submitted by Defendants in opposition to Plaintiff's motion to amend.  (Dkt. No. 26-1 through 9.)  The Court is not convinced that Plaintiff's reference to Evans-Dame's background search (Dkt. No. 24-1 at ¶ 50) qualifies as incorporation by reference of Defendants' submissions, or that a court would find the submissions integral to the proposed amended complaint.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

facts plausibly showing causation between his associational conduct and MVCC's failure to hire him. *See Petrario v. Cutler*, 187 F. Supp. 2d 26, 31 (D. Con. 2002) (citing *Gorman-Bakos v. Cornell Coop. Extension*, 252 F.3d 545, 553 (2d Cir. 2001)).

The Court has concluded that Plaintiff has failed to allege facts making a plausible showing on causation. *See Diesel v. Town of Lewisboro*, 232 F.3d 92, 107 (2d Cir. 2000). Therefore, the Court finds Plaintiff has also failed to state a claim for violation of his First Amendment right of free association with respect to his civil rights litigation history and that further amendment would be futile.

Plaintiff  alleges in his proposed amended complaint that after he was rejected for the Employee Relations Director position the second time, he let MVCC Board members, VanWagoner, and Frisbee know of the manner in which the selection process was deliberately and improperly manipulated by Evans-Dame. (Dkt. No. 24-1 at ¶¶ 25, 34.)  As discussed above, speech intended to redress personal grievances rather than a broader public concern is not protected from retaliation by the First Amendment. *Ruotolo*, 514 F.3d at 189.  The same public concern requirement applies to Plaintiff's First Amendment claim regarding his complaints to the Board, Frisbee, and VanWagoner.  The Court finds that those complaints constituted personal grievances rather than matters of public concern.  Furthermore, MVCC had already failed to choose Plaintiff for the Employee Relations Director position, as well as two other positions, before Plaintiff informed the Board, Frisbee, and VanWagoner of his beliefs regarding Evans-Dame's actions, and it is implausible that Plaintiff would have been selected for the position absent his comments after previously having been rejected for three positions.  Therefore, the Court finds that Plaintiff has also failed to state a claim that Defendants violated his First

Amendment right of association as a result of those comments and further finds that allowing any further amendment would be futile.

## V.    FOURTEENTH AMENDMENT DUE PROCESS

Defendants argue the inclusion of a Fourteenth Amendment due process claim is improper as Plaintiff has moved beyond the Second Circuit's directions giving him the opportunity to address the deficiencies identified in his original complaint. *Id.* at 16. Defendants further argue that Plaintiff has failed to allege a deprivation of any cognizable liberty interest. *Id.* at 18.

Plaintiff has alleged in his amended complaint that he had a property interest in residing free and clear from Defendants' interference, harassment, and retaliation, and that he was constructively divested of full and fair employment and career progression without the benefit of due process.[10]  (Dkt. No. 24-2 at ¶¶ 40-41.)  The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property without due process, and those who seek to invoke its procedural protection must establish one of those interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  To state a Fourteenth Amendment due process claim under § 1983, Plaintiff must allege the deprivation of a constitutionally protected interest. *Abramson v. Pataki*, 278 F.3d 93, 99 (2d Cir. 2002).  In order to have an interest protectable under the Constitution, a person must have a legitimate claim of entitlement. *Id.* (citing *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 577 (1972)).  An abstract need, desire or unilateral expectation is not enough.  *Abramson*, 278 F.3d at 99.

---

[10] While the Court agrees that Plaintiff has moved beyond addressing the deficiencies identified in the Second Circuit's decision by alleging a Fourteenth Amendment due process claim, given the liberality with which amendments to pleadings are to be allowed, the Court will consider the claim. *See Foman,* 371 U.S. at 182.

Plaintiff alleges he was "constructively divested from full and fair employment and career progression without the benefit of due process." (Dkt. No. 24-1 at ¶ 41.) However, "before one can develop a property right in employment, one must – at a minimum – be employed." *Kosinski v. Connecticut State Dep't of Educ.*, No. 3:10-cv-0805 (CSH), 2011 WL 1134236, at *5 (D. Conn. March 24, 2011) (citing *Coogan v. Smyers*, 134 F.3d 479, 487 (2d Cir. 1988) (holding that a prospective employee "had no property right or entitlement to the position.")); *see also MacFarlane v. Grasso*, 696 F.2d 217, 221 (2d Cir. 1982) (applicant for government employment has no property interest in the job he seeks absent a "*legitimate* claim of entitlement to it.") (citing *Roth*, 408 U.S. at 577).[11]

Plaintiff's wholly conclusory allegation that Defendant Evans-Dame manipulated the selection process in violation of unidentified "state statute, guidelines, and administrative regulations" is inadequate to plausibly show a legitimate claim of entitlement to any of the positions for which he applied. (Dkt. No. 24-1 at ¶ 23.) Therefore, the Court finds that Plaintiff has failed to state a § 1983 claim for denial of his right to due process under the Fourteenth Amendment and further finds that any amendment would be futile.

## VI.    CONCLUSION

Based upon the foregoing, the Court finds that Plaintiff has failed to state a § 1983 claim for: (1) First Amendment retaliation; (2) First Amendment freedom of association; and

---

[11] The Due Process Clause likewise does not "grant a liberty interest in any particular employment position." *Kosinski*, 2011 WL 1134236, at *5 (citing and quoting *Roth*, 408 U.S. at 572. "A decision not to hire does not implicate [a] plaintiff's liberty interest unless that decision 'effectively prohibits [him] from engaging in a profession, or pursuing any job in a given field.'"). *Id*. (quoting *Cityspec, Inc. v. Smith*, 617 F. Supp. 2d 161, 169 (E.D.N.Y. 2009); *see also Roth*, 408 U.S. at 575 ("It stretches the concept of liberty too far to suggest that a person is deprived of 'liberty' when he is simply not rehired in one job but remains as free as before to seek another.").

Fourteenth Amendment procedural due process.  Moreover, the Court concludes that allowing

Plaintiff another opportunity to amend would be futile. Therefore, the Court recommends that

Plaintiff's motion for leave to amend (Dkt. No. 24) be denied without leave to further amend.

      **ACCORDINGLY**, it is hereby

      **RECOMENDED** that Plaintiff's motion to amend (Dkt. No. 24) be **DENIED**

**WITHOUT FURTHER LEAVE TO AMEND**; and it is further

      **RECOMMENDED** that the Clerk of the Court enter judgment in favor of Defendants

and close the case; and it is hereby

      **ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-

Recommendation, along with copies of the unpublished decisions cited herein in accordance

with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (*per curiam*).

      Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.[12]  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72.

Dated: December 15, 2017
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[12] If you are proceeding pro se and are served with this Order and Report-Recommendation by
mail, three additional days will be added to the fourteen-day period, meaning that you have
seventeen days from the date the Order and Report-Recommendation was mailed to you to serve
and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a
Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day
that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

2016 WL 1491017
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

James Bradley, Plaintiff,

v.

City of New York, et al., Defendants.

14 CV 4289 (NGG)(RML)
|
Signed March 16, 2016

*ORDER AND REPORT AND RECOMMENDATION*

LEVY, United States Magistrate Judge:

**\*1** Plaintiff *pro se* James Bradley ("plaintiff") moves for leave to file a second amended complaint and for sanctions. For the reasons stated below, plaintiff's motion for sanctions is denied, and I respectfully recommend that plaintiff's motion to amend be denied. [1]

**BACKGROUND**

Plaintiff commenced this action in July 2014, asserting, *inter alia,* claims under 42 U.S.C. § 1983 for excessive force and failure to intervene. (*See* Complaint, dated July 11, 2014, Dkt. No. 1.) The complaint arises from an incident that occurred on April 14, 2013 at approximately 7:00 a.m., when Police Officer Yanira Golphin and Lieutenant Eric Delman responded to a 911 call at plaintiff's home. Plaintiff alleges that, during this incident, defendants Golphin and Delman used excessive force against him, causing him to sustain serious physical injuries. (*Id.* ¶¶ 12–21.) Plaintiff amended his complaint, on consent, in January 2015. (*See* Amended Complaint, dated Jan. 30, 2015.) He now seeks to amend his complaint a second time, to add claims against Corporation Counsel Zachary W. Carter and Assistant Corporation Counsel Max McCann. (*See* Letter of James Bradley, dated Jan. 15, 2016, Dkt. No. 38.) He also requests monetary sanctions for "mistakes" made by defendants in discovery. (*Id.*)

**DISCUSSION**

A. *Motion to Amend*

Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." Nevertheless, a motion to amend should be denied if there is an "apparent or declared reason–such as undue delay, bad faith or dilatory motive ..., repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment...." *Foman v. Davis,* 371 U.S. 178, 182 (1962). The decision to grant or deny leave to amend is within the court's discretion. *H.L. Hayden Co. v. Siemens Med. Sys., Inc.,* 112 F.R.D. 417, 419 (S.D.N.Y. 1986) (citations omitted).

**\*2** Defendants argue that leave to amend should be denied because the proposed amendment is futile. (Letter of Maria Fernanda DeCastro, Esq., dated Jan. 25, 2016, Dkt. No. 39.) In evaluating whether a proposed amendment would be futile, the court should apply the same standards as those governing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See IBEW Local Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC,* 783 F.3d 383, 389 (2d Cir. 2015) ("[T]he standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss.") (citation omitted); *Burrowes v. Brookdale Hosp. & Med. Ctr.,* No. 01 CV 2969, 2002 WL 32096575, at \*3 (E.D.N.Y. Mar. 28, 2002) (opposition to a motion for leave to amend based on "[f]utility is assessed by the same standards applied to a motion to dismiss."), *aff'd,* 66 Fed.Appx. 229 (2d Cir. 2003).

As defendants accurately point out, an attorney who is defending a governmental entity in ongoing litigation is entitled to absolute immunity. *El–Bey v. New York,* No. 12 CV 2385, 2012 WL 1902268, at \*2 (E.D.N.Y. May 24, 2012); *see also Mangiafico v. Blumenthal,* 471 F.3d 391, 396 (2d Cir. 2006) ("We have expanded [absolute immunity] to apply to the functions of a government attorney 'that can fairly be characterized as closely associated with the conduct of litigation or potential litigation' in civil suits–including the defense of such actions.") (quoting *Barrett v. United States,* 798 F.2d 565, 572 (2d Cir. 1986)). Because plaintiff cannot state

Bradley v. City of New York, Not Reported in F.Supp.3d (2016)
Case 6:14-cv-01172-GTS-TWD    Document 28    Filed 12/15/17    Page 23 of 54
2016 WL 1491017

a claim for relief against the Corporation Counsel or Assistant Corporation Counsel, I respectfully recommend that his motion to amend the complaint to name them as defendants be denied. [2]

Any objections to this Report and Recommendation must be filed within fourteen (14) days, with courtesy copies to Judge Garaufis and to my chambers, in order to preserve appellate review. *See* 28 U.S.C. § 636(b)(1).

B. *Sanctions*

Plaintiff also seeks "costs and sanctions" relating to three alleged "mistakes" made by defendants during discovery in this matter. (*See* Letter of James Bradley, dated Jan. 15, 2016.) Under Rule 37 of the Federal Rules of Civil Procedure, a court may award sanctions against a party who fails to comply with discovery obligations without "substantial justification." FED. R. CIV. P. 37(d)(3). The court also has "inherent power" to impose sanctions on a party for " 'misconduct in discovery.' " *Vaigasi v. Solow Mgmt. Corp.,* No. 11 CV 5088, 2016 WL 616386, at *19 (S.D.N.Y. Feb. 16, 2016) (quoting *Metro. Opera Ass'n*

*v. Local 100, Hotel Emps. & Rest. Emps. Int'l Union,* 212 F.R.D. 178, 220 (S.D.N.Y. 2003)). Sanctions are only appropriate " '[w]hen a party seeks to frustrate [discovery] by preventing disclosure of facts essential to an adjudication on the merits.' " *Tse v. UBS Fin. Servs., Inc.,* 568 F.Supp.2d 274, 321–22 (S.D.N.Y. 2008) (listing cases where courts awarded attorney's fees for incomplete discovery responses) (quoting *Daval Steel Prods. v. M/V Fakredine,* 951 F.2d 1357, 1365 (2d Cir. 1991) (alteration in original)).

I have reviewed plaintiff's contentions, and I find that sanctions are not warranted. To the extent that defendants have made incorrect statements in their disclosures, such errors were not made willfully or in bad faith, and plaintiff has demonstrated no resulting prejudice. Accordingly, plaintiff's motion for costs and sanctions is denied.

**\*3** So ordered and respectfully submitted.

**All Citations**

Not Reported in F.Supp.3d, 2016 WL 1491017

Footnotes

1    Whether a motion to amend is considered dispositive or non-dispositive under 28 U.S.C. § 636(b) is not clearly settled. *Charlot v. Ecolab, Inc.,* 97 F.Supp.3d 40, 46 (E.D.N.Y. 2015); *see also Louis v. Metro. Transit Auth.,* No. 12 CV 6333, 2014 WL 5311455, at *1 (E.D.N.Y. Oct. 16, 2014) (noting that the Second Circuit has referred to a motion to amend as a non-dispositive matter, but has not explicitly decided the issue, and that district courts in this circuit have suggested that a magistrate judge's denial of a motion to amend a complaint should be treated as dispositive, while a grant of the same motion should be treated as non-dispositive); *Allen v. United Parcel Serv., Inc.,* 988 F.Supp.2d 293, 297 (E.D.N.Y. 2013) (noting that authority is divided about whether a motion to amend a complaint is a dispositive or non-dispositive matter and declining to take a position where court would adopt the Report and Recommendation under either standard); *Dollar Phone Corp. v. St. Paul Fire and Marine Ins. Co.,* No. 09 CV 1640, 2011 WL 837793, at *1 (E.D.N.Y. Mar. 4, 2011) ("The proper standard of review to apply to objections to a magistrate's order denying leave to amend is not clearly settled in this Circuit."). In an excess of caution, I have treated plaintiff's motion to amend as dispositive.

2    I also note that, although plaintiff seeks to amend the caption to include Corporation Counsel Zachary W. Carter and Assistant Corporation Counsel Max McCann as defendants, his proposed Second Amended Complaint contains no specific allegations concerning those proposed defendants. (*See* Proposed Amended Complaint, filed Jan. 15, 2016, Dkt. No. 38–1.)

**End of Document**                              © 2017 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Red Flag - Severe Negative Treatment
Affirmed in Part, Reversed in Part and Remanded by Cresci v. Mohawk
Valley Community College, 2nd Cir.(N.Y.), June 2, 2017

2015 WL 13037477
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Peter J. Cresci, Plaintiff,
v.
Mohawk Valley Cmty. College; Kimberly
Evans-Dame, Individually; and John
Does 1-4, Individually, Defendants.

6:14-CV-1172 (GTS/TWD)
|
Signed 09/11/2015

**Attorneys and Law Firms**

PETER J. CRESCI, Cresci Law Firm, LLC, 830 Avenue
A, Suite 1, Bayonne, NJ 07002, Plaintiff, Pro Se.

OFFICE OF FRANK W. MILLER 6575 Kirkville Road,
OF COUNSEL: CHARLES C. SPAGNOLI, ESQ., East
Syracuse, NY 13057

**DECISION and ORDER**

Hon. Glenn T. Suddaby, Chief U.S. District Judge

 **\*1** Currently pending before the Court, in this
employment discrimination action filed *pro se* by
Peter J. Cresci ("Plaintiff") against Mohawk Valley
Community College, Kimberly Evans-Dame, and John
Does 1-4 ("Defendants"), is Defendants' motion to
dismiss Plaintiff's Complaint for failure to state a claim
upon which relief can be granted pursuant to Fed. R.
Civ. P. 12(b)(6) and for lack of subject-matter jurisdiction
pursuant to Fed. R. Civ. P. 12(b)(1). For the reasons set
forth below, Defendants' motion is granted.

**I. RELEVANT BACKGROUND**

 **A. Plaintiff's Claims**
Generally, liberally construed, Plaintiff's Complaint
alleges that Defendants wrongfully discriminated and
retaliated against him in the following ways: (a) after he

applied for the position of Employee Relations Director
at Mohawk Valley Community College ("MVCC") in
late-August of 2012, and subsequently interviewed for
that position, he was not hired by Defendant MVCC
because on September 27, 2012, MVCC's Director of
Human Resources, Defendant Evans-Dame (who was the
"selecting official" at MVCC), "disrupted the selection
process" by amending the job requirements and recruiting
another person (named Paul P, Gallagher), motivated
by a dislike of Plaintiff's status as a veteran and his
prior activity in filing civil rights actions on behalf of
others; (b) after Plaintiff again applied for the position
of Employee Relations Director on October 15, 2013, he
was again not hired by Defendant MVCC despite the
fact that he was the only applicant, because Defendant
Evans-Dame (who again was the "selecting official")
subsequently decided that "the position will not be filled
at this time," motivated by a dislike of Plaintiff's status
as a veteran, his prior activity filing civil rights actions on
behalf of others, and his prior activity in filing Freedom of
Information Law requests of Defendant MVCC; and (c)
after Plaintiff applied for the positions of Vice President
of Administration on February 5, 2013, and Executive
Director of Organizational Development on February 11,
2013, he was again not hired by Defendant MVCC, or
even interviewed for those positions, for the same reasons
as stated above. (*See generally* Dkt. No. 1 [Plf.'s Compl.].)

Based on these factual allegations, Plaintiff's Complaint
asserts the following three claims against Defendants:
(1) a claim of discrimination in violation of the United
States Employment and Reemployment Rights Act of
1994, 38 U.S.C. §§ 4301-4333 ("USERRA"); (2) a claim
of retaliation in violation of USERRA; and (3) a claim
of retaliation under the First and Fourteenth Amendment
to the United States Constitution in violation of 42 U.S.C. §
1983. (*Id.*)

Familiarity with these claims and the factual allegations
supporting them in Plaintiff's Complaint is assumed in this
Decision and Order, which is intended primarily for the
review of the parties.

 **B. Parties' Briefing on Defendants' Motion**

  **1. Defendants' Memorandum of Law in Chief**

Cresci v. Mohawk Valley Cmty. College, Slip Copy (2015)

Case 6:14-cv-01172-GTS-TWD    Document 28    Filed 12/15/17    Page 25 of 54

2015 WL 13037477

Generally, in their memorandum of law in chief, Defendants assert three arguments. (Dkt. No. 5, Attach. 1 [Defs.' Memo. of Law].)

**\*2** First, Defendants argue, Plaintiff's discrimination and retaliation claims against all Defendants under USERRA must be dismissed for lack subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) for the following reasons: (a) while 38 U.S.C. § 4323(b)(1) expressly permits the *United States* to assert a claim under USERRA against a state (or one of its agencies, such as Defendant MVCC) in federal court, it does not expressly permit a *person* to assert a claim under USERRA against a state (or one of its agencies, such as Defendant MVCC) in federal court, a fact recognized by the Fifth, Seventh, Ninth and Eleventh Circuits; (b) similarly, while 38 U.S.C. § 4323(b)(2) expressly permits a person to assert a claim under USERRA against a state (or one of its agencies, such as Defendant MVCC) in *state* court, it does not expressly permit a person to assert a claim under USERRA against a state agency (or an employee thereof, such as Defendants Evans-Dame and John Does 1-4) in *federal* court; and (c) 42 U.S.C. § 1983 may not be used as a mechanism through which to bring a USERRA claim. (*Id.*)

Second, Defendants argue, Plaintiff's discrimination and retaliation claims against Defendants Evans-Dame and John Does 1-4 under USERRA must be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) because, while 38 U.S.C. § 4323(b)(2) expressly permits a person to assert a claim under USERRA against a state (or one of its agencies, such as Defendant MVCC) in state court, it does not expressly permit a person to assert a claim under USERRA against an *employee* of a state agency. (*Id.*)

Third, Defendants argue, Plaintiff's retaliation claim under the First and Fourteenth Amendments must be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) for the following reasons: (a) as an initial matter, the Complaint fails to allege facts plausibly suggesting that Plaintiff engaged in speech or similar conduct that was *protected* by the First Amendment (in that it was, *inter alia*, on a topic of public concern); and (b) in any event, the Complaint fails to allege facts plausibly suggesting that such speech *caused* the adverse action that Plaintiff allegedly experienced. (*Id.*)

**2. Plaintiff's Opposition Memorandum of Law**

Generally, in his opposition memorandum of law, Plaintiff responds to each of Defendants' arguments. (Dkt. No. 7 [Plf.'s Opp'n Memo. of Law].)

With regard to Defendants' first argument (i.e., that Plaintiff's discrimination and retaliation claims against all Defendants under USERRA must be dismissed for lack subject-matter jurisdiction), Plaintiff argues as follows: (a) the point of law that 38 U.S.C. § 4323(b)(1) permits a person to assert a claim under USERRA against a state agency in federal court is recognized in *Goodman v. City of New York*, 10-CV-5236, 2011 WL 4469513 (S.D.N.Y. Sept. 26, 2011), wherein the Southern District of New York enabled a person to assert a claim under USERRA against the City of New York in federal court; (b) similarly, the point of law that 38 U.S.C. § 4323(b)(2) permits a person to assert a claim under USERRA against a state agency (or an employee thereof, such as Defendants Evans-Dame and John Does 1-4) in federal court is recognized in *Staub v. Proctor Hosp.*, 131 S. Ct. 1186 (2011), wherein the Supreme Court, in deciding a USERRA claim against an employer, relied on general principles of agency law and reasoned that "responsibility for [an] adverse action can ... be attributed to [an] agent ... if the adverse action is the intended consequence of that agent's discriminatory conduct"; (c) moreover, in the event the Court is "amenable to creating new case law," it can follow the cases of *Gentry v. Oldham County*, 08-CV-0676, 2011 WL 221877 (W.D. Ky. Jan. 21, 2011), and *Blackson v. Desoto County*, 10-CV-0169, 2011 U.S. Dist. LEXIS 112012 (N.D. Miss. Sept. 29, 2011) (wherein the Western District of Kentucky and Northern District of Mississippi each held that, because the county was a political subdivision of the state, the court had subject-matter jurisdiction over the individual-plaintiff's USERRA claims against the county), because 38 U.S.C. § 4323(i) defines a political subdivision of a state (such as a county) as a private employer under 38 U.S.C. § 4323(b)(3); and (d) even if the Court finds subject-matter jurisdiction lacking under 38 U.S.C. § 4323, the Court can, and should, exercise supplemental jurisdiction over Plaintiff's USERRA claims under 28 U.S.C. § 1367, because they arise out of the same "nucleus of operative facts" that gives rise to his Section 1983 retaliation claim. (*Id.*)

Cresci v. Mohawk Valley Cmty. College, Slip Copy (2015)

2015 WL 13037477

Case 6:14-cv-01172-GTS-TWD    Document 28    Filed 12/15/17    Page 26 of 54

**\*3** With regard to Defendants' second argument (i.e., that Plaintiff's discrimination and retaliation claims against Defendants Evans-Dame and John Does 1-4 under USERRA must be dismissed for failure to state a claim), Plaintiff relies on his above-described argument that, in *Staub v. Proctor Hosp.*, 131 S. Ct. 1186 (2011), the Supreme Court, reasoned that "responsibility for [an] adverse action can ... be attributed to [an] agent ... if the adverse action is the intended consequence of that agent's discriminatory conduct." (*Id.*)

With regard to Defendants' third argument (i.e., that Plaintiff's First Amendment retaliation claim must be dismissed for failure to state a claim), Plaintiff argues as follows: (a) the Complaint does allege facts plausibly suggesting that Plaintiff engaged in speech that was protected by the First Amendment by alleging (in Paragraphs 9, 11, 12 and 28 of his Complaint and Attachment B to his opposition memorandum of law) that he had filed Freedom of Information Law ("FOIL") "requests" regarding the position of Employee Relations Director, including one filed at some point between February 11, 2013, and June 4, 2013, and by alleging (in Paragraphs 13, 18 and 28 of his Complaint and Attachment C to his opposition memorandum of law) that he had filed "civil rights complaints on behalf of certain clients"; and (b) the Complaint does allege facts plausibly suggesting that such speech caused the adverse action that Plaintiff allegedly experienced, by alleging (in Paragraphs 9, 11, 12, 19 and 28 of his Complaint and Attachments B and C to his opposition memorandum of law) that (i) Defendant Evans-Dame learned of Plaintiff's filing of civil rights cases (through her receipt of his résumé) on or about August 27, 2012, (ii) Defendant Evans-Dame disrupted the selection process by recruiting and selecting Paul P. Gallagher between September 27, 2012, and November 19, 2012, (iii) MVCC's Vice President of Administrative Services, Thomas G. Squires, learned of Plaintiff's filing of a FOIL request at some point between February 11, 2013, and June 4, 2013, and (iv) Defendant Evans-Dame (as "a selecting official" at MVCC) caused the second job-vacancy announcement to be pulled at some point after October 15, 2013. (*Id.*)

Finally, in the alternative, Plaintiff requests leave to file an Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(2), or a more definite statement in accordance with Fed. R. Civ. P. 12(c). (*Id.*)

**3. Defendants' Reply Memorandum of Law**

Generally, in their reply memorandum of law, Defendant asserts four arguments. (Dkt. No. 10 [Defs.' Reply Memo. of Law].)

First, Defendants argue, Plaintiff failed to show that the Court possesses subject-matter jurisdiction over his discrimination and retaliation claims against all Defendants under USERRA for the following reasons: (a) the first case cited by Plaintiff, *Goodman*, is inapposite because it does not regard a USERRA claim asserted against a state or state agency, but one against a city, which does not enjoy sovereign immunity; (b) the next case cited by Plaintiff, *Staub*, is inapposite because it involved a USERRA claim asserted against an employer, not any USERRA claims asserted against individual employees of the employer; (c) the next two cases cited by Plaintiff, *Gentry* and *Blackson*, are inapposite because they do not regard USERRA claims asserted against a state agency (such as MVCC), but ones against state political subdivisions (specifically, counties), and 38 U.S.C. § 4303(14) treats state "agencies" as a distinct from state "political subdivisions"; and (d) Plaintiff's argument that the Court exercise pendent jurisdiction over the claims is unavailing, because, in *Oneida County, N.Y. v. Oneida Indian Nation of New York State*, 470 U.S. 226, 251 (1985), the Supreme Court held that the "[t]he Eleventh Amendment forecloses ... the application of normal principles of ancillary and pendent jurisdiction where claims are pressed against the State." (*Id.*)

**\*4** Second, Defendants argue, Plaintiff failed to show that USERRA allows claims against individual state employees because, again, *Staub* involved a USERRA claim asserted against an employer, not any claims asserted against individual employees of the employer. (*Id.*)

Third, Defendants argue, Plaintiff fails to save his retaliation claim under the First Amendment from dismissal for the following reasons: (a) Plaintiff supports his argument with matters outside the four corners of the Complaint (i.e., his own verification and its exhibits), which may not be considered on a motion to dismiss for failure to state a claim; (b) the Complaint's allegations about Plaintiff's filing of FOIL "requests" and "civil rights complaints on behalf of certain clients" fail to put

Defendants on notice of the nature of Plaintiff's claims or to allege that Plaintiff's speech was protected as on a matter of public concern; and (c) in any event, the Complaint's factual allegations fail to plausibly suggest that such speech *caused* the adverse action that Plaintiff allegedly experienced (or that Defendants were even aware of any of the alleged speech), and indeed contradict such an inference (e.g., by conspicuously neglecting to allege in Paragraph 7 that Defendant Evans-Dame was "nervous[ ] and very obsessive" about such speech. (*Id.*)

Fourth, Defendants argue, Plaintiff's request for leave to file either an Amended Complaint or to a "more definite statement" should be denied for the following reasons: (a) the request is procedurally improper in that Plaintiff has filed neither a cross-motion nor a proposed Amended Complaint, as required by the Local Rules of Practice; and (b) in any event, even if the Court were to assume that the proposed amendments would be consistent with Plaintiff's verification and opposition memorandum of law, the Court would find that they would not cure the deficiencies in Plaintiff's retaliation claim, because (i) the fact that Defendant Evans-Dame's selected Plaintiff for an interview on September 27, 2012, after receiving his résumé on or about August 27, 2012, renders unreasonable any inference that the résumé's reference to civil rights litigation caused her to recruit and select Mr. Gallagher between September 27, 2012, and November 19, 2012, and (ii) the allegation that Defendants changed the reason for their retaliation (from the filing of civil rights actions to the filing of FOIL requests) in early-2013 is simply implausible. (*Id.*)

## II. GOVERNING LEGAL STANDARDS

### A. Legal Standard Governing a Motion to Dismiss for Failure to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6)

It has long been understood that a defendant may base a motion to dismiss for failure to state a claim upon which relief can be granted on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such motions are often based on the first ground, a few words on that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

**\*5** On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp.2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp.2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d. ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp.2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears

Case 6:14-cv-01172-GTS-TWD   Document 28   Filed 12/15/17   Page 28 of 54

Cresci v. Mohawk Valley Cmty. College, Slip Copy (2015)

2015 WL 13037477

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id.* at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation [s]." *Id.* at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.* [1]

**\*6** As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.... [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* [2]

Finally, a few words are appropriate regarding what documents are considered when a dismissal for failure

to state a claim is contemplated. Generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case. [3]

### B. Legal Standard Governing a Motion to Dismiss for Lack of Subject-Matter Jurisdiction Pursuant to Fed R. Civ. P. 12(b)(1)

**\*7** "It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it. *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000). A district court may look to evidence outside of the pleadings when resolving a motion to dismiss for lack of subject-matter jurisdiction. *Makarova*, 201 F.3d at 113. The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]). When a court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must be resolved and inferences drawn in favor of the plaintiff. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Makarova*, 201 F.3d at 113).

### III. ANALYSIS

After carefully considering the matter, the Court grants Defendants' motion to dismiss for each of the reasons stated in their memoranda of law. *See, supra,* Parts I.B.1. and I.B.2. of this Decision and Order. To those reasons, the Court adds six points.

First, with regard to Defendants' argument that 38 U.S.C. § 4323(b)(1) does not permit a person to assert a claim under USERRA against a state (or one of its agencies, such as Defendant MVCC) in federal court, another reason for the Court's finding that *Goodman* is inapposite

is that 38 U.S.C. § 4323(i) defines a political subdivision of a state (such as a city) as a private employer for purposes of 38 U.S.C. § 4323(b)(3), but does not do so for an agency of a state, as Defendant MVCC is alleged to be (and as it clearly is). (Dkt. No. 1, at ¶¶ 3, 15.)

Second, with regard to Defendants' argument that 42 U.S.C. § 1983 may not be used as a mechanism through which to bring a USERRA claim, another reason for the Court's rejection of Plaintiff's reliance on 28 U.S.C. § 1367 is that the exercise of supplemental jurisdiction is a matter of the Court's discretion; and here the Court declines to exercise such supplemental discretion because (a) Plaintiff's discrimination and retaliation claims under USERRA substantially predominate over his retaliation claim under the First Amendment, (b) the Court has dismissed all claims over which it has original jurisdiction (as explained below), and (c) judicial economy weighs in favor of such a declination.

Third, other reasons that the Court finds that Plaintiff has failed to state a discrimination or retaliation claim under USERRA are the following:[4] (a) the fact that Plaintiff alleges in Paragraph 10 that Mr. Gallagher was a non-veteran only upon "information and belief" (despite having allegedly filed a FOIL request regarding the Employee Relations Director position) weakens an inference that Plaintiff was not hired because of his veteran status; (b) the fact that Plaintiff does not even bother to allege in a conclusory fashion that the pool of candidates not hired for the first Employee Relations Director position did not include any non-veterans weakens an inference that he was not hired because of his veteran status; (c) the fact that Plaintiff alleges in Paragraph 9 that Mr. Gallagher met Defendant Evans-Dame's "amend[ed] ... [job] requirements" (but Plaintiff did not do so) plausibly suggests that there was a legitimate reason (i.e., other than Plaintiff's veteran status) for her decision; and (d) the fact that Plaintiff alleges in Paragraph 12 that Defendant Evans-Dame decided that "the position will not be filled at this time" after she received only one application for the position (i.e., Plaintiff's application) plausibly suggests that there was a legitimate reason (i.e., other than Plaintiff's veteran status) for her decision. Simply stated, while discriminating or retaliating against a veteran would be disgraceful in addition to being unlawful, the suggestion that Plaintiff experienced such retaliation, based on Plaintiff's allegations, is not plausible.

**\*8** Fourth, with regard to Defendants' argument that the Complaint does not allege facts plausibly suggesting that Plaintiff engaged in speech that was protected by the First Amendment, other reasons for the Court's rejection of Plaintiff's reliance on his alleged filing of "civil rights complaints on behalf of certain clients" and FOIL "requests" are the following: (a) while Exhibits B and C to Plaintiff's verification[5] may be considered as incorporated by reference in and/or integral to his Complaint,[6] neither his verification nor his opposition memorandum of law may be so incorporated;[7] (b) even when construed together with Exhibits B and C, Plaintiff's Complaint fails to allege facts plausibly suggesting that he filed a FOIL request before February 11, 2013 (i.e., that he actually filed more than one FOIL request); and (c) his Complaint is conspicuously absent of any factual allegations plausibly suggesting that the *bulk* of his civil rights practice had consisted of prosecuting, instead of defending, civil rights complaints on behalf of others.[8]

**\*9** Fifth, with regard to Defendants' argument that the Complaint does allege facts plausibly suggesting that Plaintiff's protected speech caused the adverse action that he allegedly experienced, other reasons for the Court's rejection of Plaintiff's reliance on the attenuated temporal relationship[9] between his protected speech and the adverse action is that the Complaint does not allege facts plausibly suggesting that Defendant Evans-Dame (a) came to *understand or believe* that the bulk of Plaintiff's civil rights practice had consisted of prosecuting, instead of defending, civil rights complaints, (b) favored Mr. Gallagher over Plaintiff because of Plaintiff's filing of civil rights complaints on behalf of others as opposed to Plaintiff's "military background, government experience, demeanor, bearing, and the types of supervisory experience [he] possessed" (as alleged in Paragraph 7 of the Complaint), (c) knew of Plaintiff's FOIL request of the spring of 2013 (which was responded to by Mr. Squires), or (d) withdrew the second job-vacancy announcement because of either the FOIL request or the civil rights complaints as opposed to the fact that only one applicant applied for the position (as alleged in Paragraph 12 of the Complaint).

Sixth, other reasons that the Court denies Plaintiff's request for leave to file an Amended Complaint are as follows: (a) because Plaintiff has been on notice of the

Cresci v. Mohawk Valley Cmty. College, Slip Copy (2015)

2015 WL 13037477

asserted deficiencies in his claims since October 21, 2014 (when Defendants' motion was filed) but has not filed a proposed Amended Complaint attempting to correct those deficiencies, he has unduly delayed in his request for leave to file an Amended Complaint; (b) because Plaintiff is admitted to practice in this Court (and has certified that he has read and understands the Local Rules of Practice, including Local Rule 7.1[a][4] ) but has not even bothered (in his opposition memorandum of law and verification) to specifically identify what his proposed amendments would be, the Court finds that he possesses a dilatory motive; (c) because this action has been pending since September 24, 2014, and is based on events occurring as far back as 2012, but no proposed Amended Complaint has yet been filed, the Court finds that granting leave to file an Amended Complaint would result in undue prejudice to Defendants (due to the increased chance that the memories of material witnesses will have faded, and relevant documents will have been destroyed); [10] and (d) the futility of the amendment is supported not simply by

the substantive defects in Plaintiff's claims but the fact that his otherwise-detailed opposition papers (drafted by an experienced civil rights attorney) are conspicuously devoid of factual allegations correcting the factual deficiencies identified by Plaintiff. [11]

**\*10  ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss Plaintiff's Complaint for failure to state a claim and lack of subject-matter jurisdiction (Dkt. No. 5) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED.** The clerk is directed to enter judgment in favor of the Defendants and close this case.

### All Citations

Slip Copy, 2015 WL 13037477

### Footnotes

1   It should be emphasized that Fed. R. Civ. P. 8's plausibility standard, explained in *Twombly*, was in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson v. Pardus*, in which (when reviewing a *pro se* pleading) the Court stated, "*Specific* facts are not necessary" to successfully state a claim under Fed. R. Civ. P. 8(a)(2). *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [emphasis added]. That statement was merely an abbreviation of the often-repeated point of law–first offered in *Conley* and repeated in *Twombly*–that a pleading need not "set out *in detail* the facts upon which [the claim is based]" in order to successfully state a claim. *Twombly*, 127 S. Ct. 1965, n.3 (citing *Conley*, 355 U.S. at 47) [emphasis added]. That statement did not mean that all pleadings may achieve the requirement of "fair notice" without ever alleging any facts whatsoever. Clearly, there must still be enough fact set out (however set out, whether in detail or in a generalized fashion) to raise a right to relief above the speculative level to a plausible level. *See Rusyniak*, 629 F. Supp.2d at 214 & n.35 (explaining holding in *Erickson*).

2   The Court notes that this pleading standard applies even to *pro se* litigants. This is because, while the special leniency afforded to *pro se* civil rights litigants somewhat loosens the procedural rules governing the form of pleadings (as the Second Circuit has observed), it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Fed. R. Civ. P. 8, 10 and 12. *See Vega v. Artus*, 610 F. Supp.2d 185, 196 & nn.8-9 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases); *Rusyniak*, 629 F. Supp.2d at 214 & n.34 (citing Second Circuit cases). Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed. R. Civ. P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow. *See Vega*, 610 F. Supp.2d at 196, n.10 (citing Supreme Court and Second Circuit cases); *Rusyniak*, 629 F. Supp.2d at 214 & n.34 (citing Second Circuit cases). Stated more simply, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended." *Jackson*, 549 F. Supp.2d at 214, n.28.

3   *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at \*1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged

Case 6:14-cv-01172-GTS-TWD    Document 28    Filed 12/15/17    Page 31 of 54

Cresci v. Mohawk Valley Cmty. College, Slip Copy (2015)

2015 WL 13037477

in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.... Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint.... However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document. It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

4    The Court notes that, while Defendants do not raise the patently implausible suggestion of the elements of Plaintiff's discrimination and retaliation claims under USERRA, the Court may *sua sponte* address the issue, because Plaintiff is proceeding *pro se. See Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (recognizing that district court has power to *sua sponte* dismiss *pro se* complaint based on frivolousness notwithstanding fact that plaintiff has paid statutory filing fee).

5    For the sake of brevity, the Court will not linger on the fact that, by omitting the words "correct" and "perjury" and inserting the word "willfully," Plaintiff's "Verification" does not appear to be sworn to pursuant to 28 U.S.C. § 1746(2), which permits such verifications that substantially state, "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct." (Dkt. No. 7, Attach. 2 ["I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment."].)

6    *See, supra,* Part II.A. of this Decision and Order (setting forth legal standard governing what documents may be considered on a motion to dismiss for failure to state a claim).

7    Ordinarily, the factual allegations contained in papers submitted by a *pro se* plaintiff in opposition to a motion to dismiss may be considered as effectively amending the factual allegations asserted in his or her complaint, to the extent the former are consistent with the latter. *Drake v. Delta Air Lines, Inc.*, 147 F.3d 169, 170, n.1 (2d Cir. 1998) (per curiam). However, that rule is based on an extension of special solicitude to the plaintiff as a *pro se* litigant. *See, e.g., Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering allegations as amended by papers submitted in opposition to motion to dismiss because of the "[l]iberal constru[ction] [to be afforded] under *pro se* pleading standards"); *accord, Donhauser v. Goord*, 314 F. Supp. 2d 119, 212 (N.D.N.Y.) (Sharpe, M.J.), *vacated on other grounds*, 317 F. Supp. 2d 160 (N.D.N.Y. 2004) (Hurd, J.). Here, Plaintiff, a practicing attorney who (by his own account) is experienced in civil rights litigation, enjoys no such special solicitude. *See Harbulak v. Suffolk*, 654 F.2d 194, 198 (2d Cir. 1981) ("[Plaintiff] is a lawyer and, therefore, cannot claim the special consideration which the courts customarily grant to pro se parties."); *Davey v. Dolan*, 453 F. Supp. 2d 749, 754 (S.D.N.Y. 2006) ("[P]laintiff here is also a member of the New York bar and his papers will be viewed accordingly.").

8    Again, for the sake of brevity, the Court will assume that filing civil rights claims *on behalf of others* is clearly protected speech or conduct, although that point of law is not clear in the Second Circuit. *Compare Dolan v. Connolly*, No. 14-2561, 2015 WL 4477342, at *3 (2d Cir. July 23, 2015) ("We perceive no sufficient basis to distinguish a prisoner's conduct in filing a grievance on his own behalf and the filing or voice, as a member of a prisoner grievance body, of grievances on behalf of other prisoners.") [emphasis added] *with Mezibov v. Allen*, 411 F.3d 712, 720-21 (6th Cir. 2005) ("[I]n the context of the courtroom proceedings, an attorney retains no personal First Amendment rights when representing his client in those proceedings.") *and Cindrich v. Fisher*, 341 Fed.Appx. 780, 788-89 (3d Cir. 2009) (holding that court filing by attorney on behalf of client was not protected speech under First Amendment) *and Gibson v. Office of Atty. Gen., State of California*, 561 F.3d 920, 926 (9th Cir. 2009) (holding that filing of legal malpractice claim by lawyer on behalf of client was not protected speech under First Amendment).

9    The Court notes that, while a month allegedly elapsed between Defendant Evans-Dame's learning of Plaintiff's filing of civil rights complaints and her alleged taking of adverse action against him, more than four-and-a-half months allegedly elapsed between Mr. Squire's learning of Plaintiff's FOIL request and Defendant Evans-Dame's alleged taking of adverse action against Plaintiff.

10   *See Geordiadis v. First Boston Corp.*, 167 F.R.D. 24, 25 (S.D.N.Y. 1996) ("The passage of time always threatens difficulty as memories fade. Given the age of this case, that problem probably is severe already. The additional delay that plaintiff has caused here can only make matters worse.").

Cresci v. Mohawk Valley Cmty. College, Slip Copy (2015)

Case 6:14-cv-01172-GTS-TWD    Document 28    Filed 12/15/17    Page 32 of 54

2015 WL 13037477

11  The Court notes that, while a *pro se* plaintiff will generally be allowed to amend his action before dismissal, that rule is based on an extension of special solicitude to the plaintiff as a *pro se* litigant. *See Gomez v. USAA Fed. Savings Bank,* 171 F.3d 794, 795 (2d Cir. 1999) (granting leave to amend before dismissal because "[a] *pro se* complaint is to be read liberally") [internal quotation marks omitted]. Here, again, Plaintiff enjoys no such special solicitude because he is a practicing and experienced attorney. *See, supra,* note 7 of this Decision and Order. In any event, such an amendment is not appropriate where, as here, "it appears that granting leave to amend is unlikely to be productive." *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir. 1993) (citations omitted), *accord, Brown v. Peters,* 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted).

---

**End of Document**                                      © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 1134236
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Richard H. KOSINSKI, Plaintiff,

v.

CONNECTICUT STATE DEPARTMENT OF
EDUCATION; and in their individual and
official capacities, Ronald Harris, Regina
Hopkins, and Gail Mangs, Defendants.

No. 3:10–CV–0805 (CSH).
|
March 24, 2011.

**Attorneys and Law Firms**

Richard H. Kosinski, New Britain, CT, for Plaintiff.

Joseph A. Jordano, Attorney General's Office, Hartford,
CT, for Defendants.

### ORDER AND MEMORANDUM ON
### DEFENDANTS' MOTIONS TO DISMISS
### AND FOR PARTIAL STAY OF DISCOVERY

HAIGHT, Senior District Judge:

**\*1** Plaintiff Richard H. Kosinski brought this action
against defendant State Department of Education
("Department of Education" or "Department") and
individual Defendants Ronald Harris, Regina Hopkins,
and Gail Mangs (collectively, "Defendants"), alleging
various constitutional and statutory violations stemming
from Defendants' failure to interview or hire Plaintiff
for a for a position with the Department. *See* Plaintiff's
Amended Complaint ("AC"). [Doc. # 23]. Defendants
have moved to dismiss the amended Counts 2, 3,
4, and 5. [Doc. # 24]. For the following reasons,
Defendants' motion to dismiss is **GRANTED**. The
individual Defendants' motion to stay all written
discovery until this court has ruled on the Defendants'
pending motion to dismiss is **DENIED** as moot. [Doc. #
32.] Further, Defendants' initial motion to dismiss is also
**DENIED** as moot. [1] [Doc. # 14.]

### I. Background

Plaintiff sought a position with the Department of
Education as an Impartial Hearing Officer in the fall
of 2008. AC at ¶ 22. He submitted an application to
the Department but was not selected to interview for
the position. *Id.* at ¶ 39. Plaintiff alleges that he was
"equally or more qualified than the other applicants"
and was discriminated against based on his "race, color,
sex, age, national origin or ancestry." *Id.* at ¶¶ 47,
57. Before filing suit he properly filed complaints with
both the Equal Employment Opportunity Commission
and the Connecticut Commission on Human Rights and
Employment Opportunities and received the appropriate
releases of jurisdiction from both agencies. *See* Exhibits to
AC. [Doc. # 27.]

Plaintiff filed this lawsuit against the Department of
Education and the three Department officers, sued in
their individual and official capacities. Plaintiff alleges:
(1) unlawful employment discrimination in violation of
Title VII of the Civil Rights Act of 1964, as amended;
(2) unlawful employment discrimination in violation of
the Age Discrimination in Employment Act of 1967,
as amended; (3) unlawful employment discrimination in
violation of the Connecticut Fair Employment Practices
Act; (4) unlawful deprivations of his rights of due
process under the Fourteenth Amendment to the U .S.
Constitution; and (5) unlawful conspiracy to violate his
rights in violation of 42 U.S.C. § 1985. Defendants move to
dismiss counts Two, Three, Four, and Five, arguing that
the Court lacks subject-matter jurisdiction over the claims
or that the Plaintiff fails to state a claim upon which relief
can be granted. FED.R.CIV.P. 12(b) 1; 12(b)(6). [2]

### II. Standard of Review

#### A. Lack of Subject–Matter Jurisdiction
Under Fed.R.Civ.P. 12(b)(1), "[a] case is properly
dismissed for lack of subject matter jurisdiction ... when
the district court lacks the statutory or constitutional
power to adjudicate it." *Makarova v. United States,
201 F.3d 110, 113 (2d Cir.2000); accord Nowak v.
Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187
(2d Cir.1996).* It is generally the plaintiff's burden to
prove by a preponderance of the evidence that subject
matter jurisdiction exists. *Makarova, 201 F.3d at 113;
Aurecchione v. Schoolman Transp. System, Inc., 426 F.3d
635, 638 (2d Cir.2005).*

WESTLAW © 2017 Thomson Reuters. No claim to original U.S. Government Works.

### B. Failure to State a Claim

**\*2** The standard of review on a motion to dismiss under Rule 12(b)(6) is a familiar one. A motion to dismiss under Rule 12(b)(6) must be decided on "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and [ ] matters of which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank of N.Y.,* 199 F.3d 99, 107 (2d Cir.1999) (citation omitted). Facing a 12(b)(6) motion, all complaints must be construed liberally. *See Rescuecom Corp. v. Google, Inc.,* 562 F.3d 123, 127 (2d Cir.2009).

In deciding a motion to dismiss, well-pleaded facts must be accepted as true and considered in the light most favorable to the Plaintiff. *Patane v. Clark,* 508 F.3d 106, 111 (2d Cir.2007). The factual allegations made in the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). This requires the complaint to contain "enough fact to raise a reasonable expectation that discovery will reveal evidence" of the plaintiff's claim. *Id.* at 556. "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, ––––, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) (citing *Twombly;* internal quotation marks omitted; emphasis added). The Supreme Court distinguishes between factual content and conclusory allegations, stating that when "bare assertions ... amount to nothing more than a formulaic recitation of the elements" of a claim, then "the allegations are conclusory and not entitled to be assumed true." *Id.* at 1951 (citing *Twombly;* internal quotation marks omitted). The Court has said that "[d]etermining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950.

In sum, the Court's focus on a motion to dismiss under Fed.R.Civ.P. 12(b)(6) is "not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995).

## III. Discussion

### A. Counts Two & Three—Eleventh Amendment Immunity

Counts 2 and 3 of the Amended Complaint allege that the State Department of Education violated, respectively, the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.,* and the Connecticut Fair Employment Practice Act ("CFPEA"), CONN. GEN.STAT. § 46a–58 *et seq.* Because the State Department of Education is entitled to immunity in this Court under the Eleventh Amendment on both the federal and state claims, Counts Two and Three against the Department are dismissed for lack of subject-matter jurisdiction.

**\*3** As interpreted by the Supreme Court and Second Circuit, the Eleventh Amendment "bar[s] federal jurisdiction over suits against the states, unless a state has expressly waived immunity or Congress authorizes such a suit through Section Five of the Fourteenth Amendment." *Pham v. State of Conn. Dep' Children & Families,* No. 3:09–cv–1869, 2010 U.S. Dist. LEXIS 109781, at \*4,2010 WL 4167217 (D.Conn. Oct. 15, 2010) (citing *Kimel v. Florida Bd. Of Regents,* 528 U.S. 62, 73, 87–90, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000)); see *In re Charter Oak Assocs.,* 361 F.3d 760, 765 (2d Cir.2004) ("The Eleventh Amendment effectively places suits by private parties against states outside the ambit of Article III of the Constitution.") (citing *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)). Eleventh Amendment immunity also applies to state agencies. "A claim against a state agency is considered a claim against the state and implicates the Eleventh Amendment because the state is a 'real, substantial party in interest.' " *Mulero v. Conn.,* 253 F.R.D. 33, 37 (D.Conn.2008) (recognizing that Eleventh Amendment bars suits against the Connecticut State Department of Education as a state agency) (quoting *Pennhurst State Sch. & Hosp. V. Halderman,* 465 U.S. 89, 106, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)). Plaintiff recognizes that the Department of Education is a "public agency of the State of Connecticut" in the Amended Complaint. AC at ¶ 2. Therefore, Plaintiff's claims against the Department of Education may only go forward if the claims are either explicitly authorized by Congress or waived by the state.

### 1. ADEA

It is well-settled that the ADEA does not abrogate a state's Eleventh Amendment immunity. *Kimel,* 528 U.S. at 91 (holding that Congress had exceeded it's authority under Section Five in attempting to abrogate state immunity in the ADEA); *see also McGinty v. New York,* 251 F.3d 84 (2d Cir.2001) (following *Kimel* ); *Pham,* 2010 U.S. Dist. LEXIS at *4,2010 WL 4167217 (following *Kimel* ). Thus, an ADEA suit may only be brought against the Department of Education if Connecticut has consented to be sued. Plaintiff has not argued that the state has waived its immunity nor presented any reason to think the state has waived its immunity to suit under the ADEA. While the Defendants do not explicitly argue that Connecticut has not waived its immunity, their argument that the ADEA claim is barred by the Eleventh Amendment in this case implicitly denies that Connecticut has waived its immunity. Nonetheless, as noted above, it is the Plaintiff's burden to demonstrate that this Court has subject-matter jurisdiction, and he has failed to even attempt to do so. [3] *See Makarova,* 201 F.3d at 113.

### 2. CFEPA

Because the CFEPA is a creation of Connecticut law, there is no question of whether Congress authorized the abrogation of state immunity only of waiver. While Connecticut has waived its immunity to suit for claims under the CFEPA, that waiver only applies to suits brought in state court. Section 46a–100 states:

> **\*4** Any person who has timely filed a complaint with the Commission on Human Rights and Opportunities in accordance with section 46a–82 and who has obtained a release from the commission in accordance with section 46a–83a or 46a–101, **may also bring an action in the superior court for the judicial district in which the discriminatory practice is alleged to have occurred** or in which the respondent transacts business, except any action involving a state agency or official may be brought in the superior court for the judicial district of Hartford.

Conn. Gen.Stat. § 46a–100 (emphasis added). "A state does not consent to suit in federal court by consenting to suit in the courts of its own creation." *Smith v. Reeves,* 178 U.S. 436, 441–445, 20 S.Ct. 919, 44 L.Ed. 1140 (1900). It is well-established that the federal courts do not have jurisdiction to hear suits against state agencies under the CFEPA. *See, e.g., Wagner v. State of Conn. Dep't of Corr.,* 599 F.Supp.2d 229 (D.Conn.2008); *Vaden v. State of Conn. Dep't of Corr.,* 557 F.Supp.2d 279 (D.Conn.2008); *Walker v. State of Connecticut,* 106 F.Supp.2d 364 (D.Conn.2000).

Plaintiff acknowledges the precedents above, but argues that a recent decision in the Connecticut Supreme Court, *Lyons v. Jones,* 291 Conn. 385 (2009), gives this Court cause to reconsider whether Connecticut has waived its immunity to suit in federal court under the CFEPA. However, Plaintiff's reliance on *Lyons* is misplaced because the opinion does not support the position that Connecticut has waived its immunity to suit under the CFEPA in federal court. *Lyons* concerns Connecticut's waiver of sovereign immunity in state court by section 46a–100. The opinion does not discuss federal court jurisdiction. Given section 46a–100's explicit reference to the *superior courts* of the state, this Court has no difficulty in following the cited appellate cases holding that the Eleventh Amendment bars suits in federal courts against Connecticut asserting claims under the CFEPA. Indeed, I have no authority to do other than follow those cases.

### B. Count Four—Section 1983 Claims

To proceed with his section 1983 claim, Plaintiff must allege (a) that some person has deprived him of a federal right; and (b) that the person who deprived him of that right acted under color of state law. *Velez v. Levy,* 401 F.3d 75, 84 (2d Cir.2005). The Due Process Clause of the Fourteenth Amendment requires a person be afforded a due process procedure—often a hearing before a neutral adjudicator—before being deprived of a constitutionally protected liberty or property interest. *Loris v. Moore,* 2008 U.S. Dist. LEXIS 63560 at *40 (D.Conn.2008) (citations omitted). "Thus, in order to sustain an action for deprivation of property without due process of law, a plaintiff must identify a property or liberty interest, and show that the state actor has deprived plaintiff of that interest without due process." *Id.* at *40–41.

Plaintiff's fourth count alleges that the individual Defendants deprived him of two distinct constitutionally protected interests: (1) his liberty interest "in pursuit of his avocation as an adjudicator, commissioner, fact-finder, arbitrator and hearing officer," and (2) his property interest in "the office of Impartial Hearing Officer and the income therefrom, and in his professional reputation and reputation in his community," in violation of the Fourteenth Amendment. AC at ¶¶ 65, 66 (Fourth Count). As a threshold matter, this Court must determine whether the Plaintiff has identified any cognizable interests—either a legitimate liberty or property interest.

### 1. Liberty Interest

**\*5** Plaintiff alleges that he has a liberty interest in "the pursuit of his avocation as an adjudicator, commissioner, fact-finder, arbitrator and hearing officer." AC at ¶ 65. The Due Process Clause of the Fourteenth Amendment does indeed protect an individual's liberty to engage in an occupation, but it does not grant a liberty interest in any particular employment position. *Bd. of Regents v. Roth,* 408 U.S. 564, 572–5, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) ("It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another."). A decision not to hire does not implicate Plaintiff's liberty interest unless that decision "effectively prohibits [him] from engaging in a profession, or pursuing any job in a given field that there is a deprivation entitled to protection." *Cityspec, Inc. v. Smith,* 617 F.Supp.2d 161, 169 (E.D.N.Y.2009).

Plaintiff alleges that the Defendants' "refusal to even interview Plaintiff clearly adversely affect[ed] his good name, reputation and honor in the pursuit of his avocation...." Pl. Opp. to Motion to Dismiss ("Pl.Opp.") at 5. This allegation is governed by the stigma-plus doctrine. *O'Connor v. Piersen,* 426 F.3d 187, 195 (2d Cir.2005) (identifying a claim that the plaintiff's liberty interest in his reputation was infringed by the defendants' conduct as a stigma-plus claim). Under the stigma-plus doctrine, Plaintiff must prove two things: (1) some action by the Defendants' imposed a tangible and material burden; and (2) utterance of a false statement that damaged his reputation in connection with the burdensome action. *Id.*

Plaintiff does not allege that any of the Defendants made any false utterances. Instead, Plaintiff argues that "[t]here is no logical basis for the need for a bad act plus. The bad act itself can do the damage to 'a person's good name, reputation' and honor." *Pl. Opp.* at 5. That is, Plaintiff asks this Court to reject controlling Circuit precedent. I cannot do this. The Second Circuit has explicitly decided the stigma-plus doctrine, and this Court is not free to disregard their decisions. *See O'Connor,* 426 F.3d at 195–96. Thus, because the Plaintiff does not allege a false statement by the Defendants, he cannot satisfy the required elements of a stigma-plus claim, which is necessary to implicate a liberty interest in his claim.

### 2. Property Interest

Plaintiff also alleges that he has a property interest "in the appointment to the office of Impartial Hearing Officer." Pl. Opp. at 4. The Defendants argue that Plaintiff does not have a property interest in position for which he was not even interviewed, much less hired. Def. Mem. at 8. Defendants characterize Plaintiff's interest as simply a "unilateral expectation of potential employment." *Id.* Defendant in effect concedes the accuracy of this characterization when he writes "[t]he fact that this is a failure to hire rather than a termination case does not affect Plaintiff's property interest." Pl. Opp. at 4.

**\*6** "In the employment context, a property interest arises only where the state is barred, whether by statute or contract, from terminating (or not renewing) the employment relationship without cause." *S & D Maintenance Co. v. Goldin,* 844 F.2d 962, 967 (2d Cir.1988). Therefore, before one can develop a property interest in employment, one must—at a minimum—be employed. *See Walker v. Daines,* 2009 U.S. Dist. LEXIS 62289, at *27 (E.D.N.Y.2009) (holding that even "temporary or at-will employee[s] [have] no property interest in [their] employment, and thus may not invoke the protections of the Due Process Clause."). Job applicants cannot have a property interest in their prospective employment. *Coogan v. Smyers,* 134 F.3d 479, 487 (2d Cir.1998) (holding that a prospective employee "had no property right or entitlement to the position").

Because Plaintiff does not have a constitutionally protected liberty or property interest in prospective employment with the Department as a Impartial Hearing Officer, he cannot sustain a claim against the Department under Section 1983 for violating the Due Process Clause. Count Four is therefore dismissed.

Case 6:14-cv-01172-GTS-TWD   Document 28   Filed 12/15/17   Page 37 of 54
Kosinski v. Connecticut State Dept. of Educ., Not Reported in F.Supp.2d (2011)
2011 WL 1134236

## C. Count Five—Conspiracy Claim

Plaintiff alleges that the individual defendants conspired to deprive plaintiff of his right to "due process and the equal protection, privileges and immunities of the laws" in violation of 42 U.S.C. § 1985. AC at 10. Section 1985(3) prohibits persons from conspiring to deprive another person of their civil rights. To bring a claim, plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Cine SK8, Inc. v. Town of Henrietta,* 507 F.3d 778, 791 (2d Cir.2007) (citation omitted).

However, as the Defendants correctly note, a Section 1985(3) claim must be premised on an underlying violation of the Constitution. *Spencer v. Casavilla,* 903 F.2d 171, 174 (2d Cir.1990) (holding that "in order to state a claim under § 1985(3) a complaint must allege, *inter alia,* that the defendants who allegedly conspired sought, with discriminatory intent, to deprive the plaintiff of a right covered by the Constitution or other laws.") (citations omitted) *see, e.g., Myers v. Twp. of Trumbull,* 2004 U.S. Dist. LEXIS 7240, at *6 (D.Conn.2004) ("Plaintiffs' § 1985(3) conspiracy claim will fail unless they can prove a violation of a substantive right."). Because the Court has dismissed Plaintiff's constitutional claims in Count Four, Plaintiff's Section 1985 claim must also be dismissed.

## IV. Conclusion

For the foregoing reasons, Defendants' amended motion to dismiss is **GRANTED,** and Counts Two, Three, Four, and Five are dismissed with prejudice. The individual Defendants' motion for a partial stay of discovery until this court has ruled on the Defendants' pending motion to dismiss is **DENIED** as moot because the individual defendants are no longer defendants in this suit. [4] Further, Defendants' initial motion to dismiss is also **DENIED** as moot since it is was superseded by the present motion to dismiss.

**\*7** The current scheduling order for Count One, which is still applicable, remains: discovery is due by April 15, 2011; dispositive motions are due June 1, 2011; the joint trial memorandum is due by July 1, 2011 or thirty days after a ruling on any dispositive motions; and the case shall be trial ready by August 1, 2011 or thirty days after filing the joint trial memorandum.

It is SO ORDERED.

## All Citations

Not Reported in F.Supp.2d, 2011 WL 1134236

---

Footnotes

1   Defendants filed their first motion to dismiss on July 13, 2010. Subsequently, the Plaintiff filed an amended complaint on August 5, 2010, and the Defendants filed an updated motion to dismiss the following day, mooting their first motion to dismiss.

2   Defendants do not move to dismiss Count One.

3   Instead, Plaintiff makes a frontal assault on the underlying merits of the Supreme Court's Eleventh Amendment jurisprudence. The particulars of Plaintiff's criticisms are irrelevant because this Court has no authority to overrule binding Supreme Court precedent.

4   There is no personal liability for Plaintiff's claim of unlawful employment discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, in Count One. *See, e.g., Chylinski v. Bank of Am., N.A.,* 2008 U.S. Dist. LEXIS 83598, at *4,2008 WL 4738692 (D.Conn.2008).

---

End of Document                                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 5311455
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Maria LOUIS, Plaintiff,

v.

The METROPOLITAN TRANSIT
AUTHORITY, et al., Defendants.

No. 12 Civ. 6333(ILG)(JO).
|
Signed Oct. 15, 2014.
|
Filed Oct. 16, 2014.

**Attorneys and Law Firms**

Frederick K. Brewington, Gregory Calliste, Jr., Mickheila Neree Jasmin, Law Offices of Frederick K. Brewington, Hempstead, NY, for Plaintiff.

Valerie K. Ferrier, MTA Bus Company, Dara A. Olds, James F. Horton, New York City Law Department, New York, NY, for Defendants.

MEMORANDUM AND ORDER

GLASSER, Senior District Judge.

 **\*1** Pending before the Court are plaintiff and defendants' objections to Magistrate Judge ("MJ") Orenstein's Report and Recommendation ("R & R") that plaintiff's motion for leave to file a second amended complaint, made after the deadline fixed in a scheduling order for filing such motions, be granted and denied in part. For the following reasons, the R & R is ADOPTED and REJECTED in part.

BACKGROUND

The R & R filed on September 23, 2014 sets forth the factual and procedural history of this litigation, and familiarity with it is presumed. Dkt. No. 49. On September 25, 2014, plaintiff filed its letter objection to the R & R. Dkt. No. 50. Defendants filed their letter objection on October 2, 2014. Dkt. No. 52. On October 10, 2014, the

Court heard oral argument on the parties' objections. Dkt. No. 54.

STANDARD OF REVIEW

Upon a party's objection to the decision of a magistrate judge on a nondispositive matter, the district court reviews the decision to ensure that it is not "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed R. Civ. P. 72(a); Fielding v. Tollaksen, 510 F.3d 175, 178 (2d Cir.2007). For dispositive matters, the district court reviews de novo the parts of the R & R to which the parties object. Fed.R.Civ.P. 72(b)(3); Integrity Elecs., Inc. v. Garden State Distribs., No. 09 Civ. 2367, 2012 WL 1041349, at \*1 (E.D.N.Y. Mar. 28, 2012). The Second Circuit has referred to a motion to amend a complaint as a non-dispositive matter, but has not explicitly decided the issue. See Fielding, 510 F.3d at 178. "[D]istrict courts in this circuit have suggested that a magistrate judge's denial of a motion to amend a complaint should be treated as dispositive, while a grant of the same motion should be treated as non-dispositive." Tyree v. Zenk, No. 05–cv–2998, 2009 WL 1456554, at \*3 (E.D.N.Y. May 22, 2009). In any event, the Court need not take a position on this question because even under the more stringent standard of review, its decision would remain the same. See Wilson v. City of New York, No. 06–CV–229, 2008 WL 1909212, at \*3–4 (E.D.N.Y. Apr. 30, 2008).

DISCUSSION

"Where a scheduling order governs amendments to the complaint, the lenient standard under Rule 15(a), which provides leave to amend 'shall be freely given,' must be balanced against the requirement under Rule 16(b) that the Court's scheduling order 'shall not be modified except upon a showing of good cause.' " Gullo v. City of New York, 540 Fed. App'x. 45, 46 (2d Cir.2013) (quoting Fed.R.Civ.P. 15 & 16). Courts in this district have held that Rules 15(a) and 16(b) should be evaluated simultaneously, with the plaintiff's diligence considered as the primary factor. E.g., Castro v. City of New York, No. 06–CV–2253, 2010 WL 889865, at \*2 (E.D.N.Y. Mar. 6, 2010); Nycomed U.S. Inc. v. Glenmark Generics Ltd., No. 08–CV–5023, 2010 WL 1257803, at \*10 (E.D.N.Y. Mar. 26, 2010).

"Good cause" requires the party seeking relief to establish that the deadline to amend the pleading could not reasonably be met despite due diligence. *See, e.g., Alexander v. Westbury Union Free School Dist.,* 829 F.Supp.2d 89, 117–18 (E.D.N.Y.2011); *Lincoln v. Potter,* 418 F.Supp.2d 443, 454 (S.D.N.Y.2006). "[G]ood cause may not be established where the facts underlying the claim were known to the plaintiff at the time the action was filed." *Alexander,* 829 F.Supp.2d at 118 (citations omitted). MJ Orenstein found that plaintiff failed to show the necessary diligence required for a finding of good cause to belatedly amend her complaint. R & R at 7. As to the specific request to add new claims, he found that "[d]ue diligence is even more plainly lacking," *id.* at 7, because "[plaintiff] offers no reason at all—let alone a sufficient one—for her failure to assert the proposed new claims before the deadline set pursuant to Rule 16." *Id.* at 8. A *de novo* review of this portion of the R & R reveals no error, and the Court therefore adopts MJ Orenstein's recommendation to deny the request to add new defendants and facts to the Complaint.

**\*2** The Court disagrees, however, with the recommendation to grant plaintiff's request to add new claims. Despite highlighting the significant deficiencies in plaintiff's showing of "good cause," the R & R nevertheless concludes that the Court should allow plaintiff "to assert her new claims against the defendants in the interest of judicial economy" because "if leave to amend is denied, [plaintiff] will be free to assert at least some of the proposed new claims in a separate lawsuit and thereby both incur additional costs and impose them on her adversaries." [1] R & R at 8. To support this conclusion, the R & R cites a case unrelated to Rule 16 for the proposition that "trial courts are vested with the inherent power to achieve orderly and expeditious disposition of cases." *Id.* (quoting *Boykin v. 1 Prospect Park ALF, LLC,* No. 12–CV–6243, 2013 WL 3964002, at \*1 (E.D.N.Y. July 30, 2013)). Yet allowing the new claims here would hardly achieve this objective. Contrary to the R & R's conclusion, the addition of ten claims to this lawsuit would generate an abundance of work—new motions, hearings, and the likely reopening of discovery—which surely undermines the interests of judicial economy.

A Rule 16 scheduling order is not "a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Kassim v. City of Schenectady,* 221 F.R.D. 363, 365 (N.D.N.Y.2003). Plaintiff had ample

opportunities to add her new claims well before the deadline in the Rule 16 scheduling order; indeed, her lawyer acknowledged that the new claims are based on facts "easily ascertainable from a liberal reading of the [initial] Complaint." Dkt. No. 30 at 3. Her unsupported request to belatedly amend her Complaint a second time runs contrary to Rule 16's objective to offer "a measure of certainty in pretrial proceedings, by ensuring that 'at some point both the parties and the pleadings are fixed.' " *Parker v. Columbia Pictures Indus.,* 204 F.3d 326, 339–40 (2d Cir.2000) (quoting Fed.R.Civ.P. 16 advisory committee's note (1983 amendment, discussion of subsection (b)).

After careful consideration of the facts as found by MJ Orenstein and the law he applied to them, the Court has a "definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors ." *See In re Josephson,* 281 F.2d 174, 182 (1st Cir.1954). The Court therefore rejects the R & R insofar as it recommends allowing plaintiff to amend the Complaint a second time and add new claims. The case should proceed based on the Amended Complaint as it was filed on July 29, 2013 (Dkt. No. 27).

As the Supreme Court recognized in *National Hockey League v. Metropolitan Hockey Club, Inc.,* 427 U.S. 639, 642–43, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976):

> There is a natural tendency on the part of reviewing courts, properly employing the benefit of hindsight, to be heavily influenced by the severity of outright dismissal as a sanction for failure to comply with a [scheduling] order.... But ..., as in other areas of the law, the most severe ... sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.

## CONCLUSION

 **\*3** Defendants' objection to the R & R's recommendation to permit plaintiff to add new claims is GRANTED. Plaintiff's objection to the R & R's denial of its motion to add new defendants and facts is REJECTED.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 5311455

Footnotes

1    At a conference held on August 16, 2013 before MJ Orenstein, plaintiff's counsel indicated that she would not commence another lawsuit if additional claims were not allowed: The Court: "What about the claims? Would you seek to vindicate them in another complaint?" Mr. Calliste: "I don't think that—that's not our office's usual practice, Your Honor...." The Court: "So you don't anticipate a separate action?" Mr. Calliste: "We don't." *See* Dkt. No. 37 at 7:1–15.

---

**End of Document**

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

which claims libel *per se* against
Ackley.

(Defs.' Mot. to Dismiss [Doc. # 81] at 1.) In particular,
Defendants argue that "[t]he new Free Speech claims are
barred by *Garcetti*," that Plaintiff has not sufficiently
pled a libel *per se* claim in Count Four, and that, to the
extent Count Four was intended to assert an intentional
infliction of emotional distress claim, the conduct alleged
does not rise to the level of "extreme and outrageous," and
the Complaint fails to plead severe emotional distress and
thus does not state an intentional infliction of emotional
distress claim. (*Id.*)

## II. PROCEDURAL BACKGROUND

Before turning to Defendants' argument in favor of
dismissal, it will be helpful first to explain some of the
pertinent procedural background. This is not Defendants'
first motion to dismiss. Defendants moved to dismiss
Plaintiff's Amended Complaint on August 13, 2012 on the
basis that Plaintiff's allegedly protected speech was not
actually protected under the First Amendment, under the
Supreme Court's decision in *Garcetti v. Ceballos,* 547 U.S.
410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006). (Defs.' Mot.
to Dismiss [Doc. # 33].) In a decision dated December 14,
2012, this Court (Arterton, J.) denied Defendants' Motion
because, although some of Plaintiff's alleged speech was
not protected under *Garcetti,* there was a great deal
of it that was (at least when reading the Complaint
in a light most favorable to the Plaintiff), including:
(1) Plaintiff's August 2010 request for a grievance; (2)
Plaintiff's September 2010 request that the union consider
a vote of no confidence in Chief Ackley; (3) Plaintiff's
attendance at meetings where he opposed Defendant
Ackley's proposal to have civilian complaints read openly
to the public; (4) Plaintiff's involvement as vice president
of the union in its June 2011 mayoral endorsement of
Councilman Buscetto; (5) Plaintiff's September 2011 open
letter in the local newspaper; and (6) Plaintiff's request that
Chief Ackley be investigated and placed on administrative
leave. (*See* Order Denying Mot. to Dismiss [Doc. # 48] at
10.)

Several months later, on July 19, 2013, Plaintiff filed a
Motion for Leave to Supplement the Complaint. (Pl.'s
Mot. for Leave [Doc. # 74].) The Motion expressly stated
that "Plaintiff does not seek to add any additional new
parties *or new claims* to this lawsuit."(*Id.* at 2) (emphasis

2013 WL 6732540
United States District Court, D. Connecticut.

LYNCH, Plaintiff,
v.
ACKLEY, et al., Defendants.

No. 3:12cv537 (MPS).
|
Dec. 19, 2013.

**Attorneys and Law Firms**

Allison L. Pannozzo, Rose Kallor LLP, Hartford, CT,
Christine S. Synodi, Synodi & Videll, LLC, New London,
CT, for Plaintiff.

Allison L. Pannozzo, Johanna G. Zelman, Michael J.
Rose, Rose Kallor, LLP, Hartford, CT, for Defendants.

**Opinion**

### ORDER ON MOTION TO DISMISS

MICHAEL P. SHEA, District Judge.

 **\*1** Defendants' Motion to Dismiss Counts One, Two and
Three is procedurally improper because it targets specific
factual allegations rather than an entire legal claim. Count
Four, however, is legally flawed because it fails to plead an
essential element. Thus, Defendants' Motion to Dismiss
[Doc. # 81] is GRANTED IN PART and DENIED IN
PART.

### I. DEFENDANTS' MOTION

The City of New London and Margaret Ackley
(collectively "Defendants") have moved to dismiss, in
part, Plaintiff's Second Amended Complaint. According
to Defendants' Motion:

> Defendants seek dismissal in whole
> or in part of: Count One, which
> is brought pursuant to Conn.
> Gen.Stat. § 31–51q against the City;
> Counts Two and Three, which are
> brought pursuant to 42 U.S.C.
> § 1983 against Ackley and the
> City, respectively; and Count Four [1]

added. Instead, Plaintiff requested that the Court "grant him leave to supplement his Amended Complaint to include events and circumstances which have occurred since the time of filing...."(*Id.*) Thus, aside from appearing to add an intentional infliction of emotional distress claim in Count Four (*see* Proposed First Supp. Compl. [doc. # 74–1] at ¶ 36), the proposed amended complaint contained only new factual allegations, not entirely new legal claims. In an order dated July 31, 2013, the Court granted Plaintiff's Motion in part, and directed Plaintiff to file a single operative complaint that would incorporate both the Amended Complaint and the new factual allegations set forth in the Proposed Supplemental Complaint. (July 31, 2013 Order [Doc. # 76].) Plaintiff thereafter filed his Second Amended Complaint on August 14, 2013 [Doc. # 77], prompting Defendants to file the instant Motion to Dismiss on September 9, 2013 [Doc. # 81].

## III. DISCUSSION

### A. Counts One, Two, and Three

**\*2** With respect to Plaintiff's free speech claims, Defendants' Motion to Dismiss is somewhat ambiguous on its face in that it asks the Court to dismiss "in whole or in part" Counts One, Two and Three. (Defs.' Mot. to Dismiss [doc. # 81] at 1.) In reading the Motion as a whole, however, it is clear that Defendants do not in fact ask the Court to dismiss Counts One, Two and Three in their entirety, nor could they, given the Court's December 14, 2012 Order denying Defendants' first motion to dismiss those counts. Instead, Defendants' Motion as to Counts One, Two and Three appears to target the new factual material in Plaintiff's Second Amended Complaint, requesting dismissal of the first three counts on the grounds that Plaintiff's "*new* Free Speech claims are barred by *Garcetti.*" (*Id.*) (emphasis added).

As noted above, Plaintiff's Second Amended Complaint does not add any new free speech claims; it simply adds factual allegations as additional support for the claims in Counts One through Three. In effect, then, Defendants' Motion asks the Court to dismiss particular factual *allegations*—as opposed to *claims*—in the Second Amended Complaint. Defendants' memorandum in support of the motion to dismiss acknowledges this by stating that "paragraphs fifty-three through eighty of Counts One, Two and Three should be dismissed"

and "Plaintiff's *allegations* regarding the June 17, 2013 grievance should be dismissed." (Defs.' Mem. [Doc. # 81–1] at 11–12.)

Defendants' Motion is procedurally improper. Federal Rule of Civil Procedure 12(b)(6), the rule upon which Defendants base their motion, provides for dismissal for failure to state a "claim." Fed.R.Civ.P. 12(b)(6). Thus, Rule 12(b)(6) is the appropriate procedural mechanism by which to dismiss "an entire claim or complaint." *See, e.g., In re Westinghouse Sec. Litig.,* No. 91–cv–354, 1998 U.S. Dist. LEXIS 3033, \*9–10, 1998 WL 119554 (W.D.Pa. Mar. 12, 1998) (citing *Day v. Moscow,* 955 F.2d 807, 811 (2d Cir.1992)). It does not provide for the dismissal of particular allegations in support of a claim. *Id.* Defendants' motion as to Counts One, Two, and Three is therefore denied.

### B. Count Four

Count Four is entitled "Libel Per Se as to Defendant Ackley," but in substance it alleges a claim of intentional infliction of emotional distress by invoking the term of art "extreme and outrageous." (*See* Pl.'s Second Am. Compl. [Doc. # 77] at 24.) Defendants argue that Count Four should be dismissed for failure to state a claim, whether it is intended as a libel *per se* claim or an intentional infliction of emotional distress claim. Plaintiff discusses only the latter in his memorandum in opposition to the Motion to Dismiss. The Court will therefore interpret Count Four as asserting a claim of intentional infliction of emotional distress only.

For an intentional infliction of emotional distress ("IIED") claim to survive a motion to dismiss, the plaintiff must plead facts that plausibly support four elements: (1) the defendant intended to inflict emotional distress or that she knew or should have known that emotional distress was the likely result of her conduct; (2) the conduct was extreme and outrageous; (3) the defendant's conduct was the cause of the plaintiff's distress; and (4) the emotional distress sustained by the plaintiff was severe. *Craig v. Yale Univ. Sch. of Med.,* 838 F.Supp.2d 4, 9 (D.Conn.2011). Defendants argue that Count Four should be dismissed for failure to state a claim for two reasons: first, Plaintiff has not pleaded "extreme and outrageous" conduct, and second, Plaintiff has not pleaded any facts that could plausibly support that he has suffered *severe* emotional distress. Although the briefs

focus primarily on extreme and outrageous conduct, it is Plaintiff's failure to sufficiently plead severe emotional distress that persuades the Court to dismiss Count Four.

**\*3** To withstand a motion to dismiss, a complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level" and plausibly state a claim for relief. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Although the Court must assume the truth of all factual allegations in the complaint, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are insufficient to withstand a motion to dismiss. *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Here, the Complaint states that Plaintiff suffered "emotional distress." (Pl.'s Second Am. Compl. [Doc. # 77] at 24.) However, this conclusory statement is not supported by any other factual allegations, and appears to be nothing more than a threadbare recital of the fourth element of an IIED claim. Further, more than just "emotional distress" is required. In Connecticut, to support an IIED claim, the emotional distress must be "severe"; in fact, it must be "so severe that no reasonable person could be expected to endure

it." *Craig,* 838 F.Supp.2d at 12. The Complaint fails to allege that the emotional distress was severe; nor does it plead any facts that would support such an allegation. *Compare with Craig,* 838 F.Supp.2d at 12–13 (holding that the following factual allegations were sufficient to withstand a motion to dismiss: trauma; sleeplessness; loss of appetite; substantial loss of employment income; overly burdensome financial hardships; damage to his relationship with his family and friends; and damage to his self-esteem and sense of self-worth).

Because the Complaint does not plead sufficient factual material plausibly to support that Plaintiff suffered severe emotional distress, the intentional infliction of emotional distress claim—the claim asserted in Count Four—is dismissed. Having dismissed Count Four on these grounds, I need not consider Defendants' argument that the alleged conduct was not extreme and outrageous.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 6732540

---

Footnotes

1    As Defendants note, there are two counts that are labeled "Count Five" in the Second Amended Complaint. The Court, like Defendants, will assume that this was a scrivener's error and refer to the first Count Five as Count Four.

---

**End of Document**                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 3831535
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

MAX IMPACT, LLC, et al., Plaintiffs,

v.

SHERWOOD GROUP, INC., Defendant.

No. 09 Civ. 902(LMM)(HBP).
|
Aug. 16, 2012.

*OPINION AND ORDER*

PITMAN, United States Magistrate Judge.

I. *Introduction*

**\*1** Plaintiffs Max Impact, LLC and Chanelia Ltd., allege that the defendant, Sherwood Group, Inc., has engaged in patent infringement, copyright infringement, trademark infringement, deceptive acts and practices, false advertising, and unfair competition in violation of, 35 U.S.C. § 271, *et seq.,* 17 U.S.C. § 101 *et seq.,* 15 U.S.C. § 1125(a), and N.Y. Gen. Bus. Law §§ 349, 350, and 360–1, respectively, as well as common law unfair competition (Amended Complaint, filed Sept. 20, 2010 (Docket Item 77) *passim* ). Specifically, plaintiffs allege that defendant was engaged in the unauthorized production, advertising, and sale of the patented "Rollabana" product, a collapsible, self-rolling, advertising banner. Chanelia has exclusive world-wide rights to manufacture, market, and sell the Rollabana product, and Max Impact has an exclusive distribution agreement for the product for the North American region (Amended Complaint ¶¶ 8–23).

By notice of motion dated November 14, 2011 (Docket Item 123), plaintiffs move for leave to file an amended complaint against defendant. The proposed amended complaint would add a claims for tortious interference with contractual relations (*See* Exhibit 5 to Declaration of Christopher B. Turcotte (Docket Item 125) ("Turcotte Decl.") ¶¶ 58–73). For the reasons set forth below, plaintiffs' motion is granted in its entirety.

II. *Analysis*

A. *Standards Applicable to Motions to Amend the Pleadings*

The standards applicable to a motion to amend a pleading are well settled and require only brief review. In general, a motion to amend is governed by Fed.R.Civ.P. 15(a), which provides that leave to amend should be freely granted when justice so requires. Fed.R.Civ.P. 15(a); *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir.2007); *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.,* 404 F.3d 566, 603 (2d Cir.2005); *Dluhos v. Float-ing & Abandoned Vessel, Known as "New York",* 162 F.3d 63, 69 (2d Cir.1998); *Gumer v. Shearson, Hammill & Co.,* 516 F.2d 283, 287 (2d Cir.1974). "Nonetheless, the Court may deny leave if the amendment (1) has been delayed unduly, (2) is sought for dilatory purposes or is made in bad faith, (3) the opposing party would be prejudiced, or (4) would be futile." *Lee v. Regal Cruises, Ltd.,* 916 F.Supp. 300, 303 (S.D.N.Y.1996) (Kaplan, D.J.), *aff'd,* 116 F.3d 465 (2d Cir.1997); *see McCarthy v. Dun & Bradstreet Corp., supra,* 482 F.3d at 200; *Ellis v. Chao,* 336 F.3d 114, 126–27 (2d Cir.2003); *Montefiore Med. Ctr. v. Am. Prot. Ins. Co.,* 00 Civ. 3235(LTS) (MHD), 2003 WL 21108261 at *1 (S.D.N.Y. May 14, 2003) (Swain, D.J.); *Am. Home Assur. Co. v. Jacky Maeder (Hong Kong) Ltd.,* 969 F.Supp. 184, 187–88 (S.D.N.Y.1997) (Kaplan, D.J.).

A proposed amendment is futile when it fails to state a claim. *Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990); *Mina Inv. Holdings Ltd. v. Lefkowitz,* 184 F.R.D. 245, 257 (S.D.N.Y.1999) (Sweet, D.J.); *Parker v. Sony Pictures Entm't, Inc.,* 19 F.Supp.2d 141, 156 (S.D.N.Y.1998) (Kaplan, D.J.), *aff'd in pertinent part, vacated in part on other grounds sub nom., Parker v. Columbia Pictures Indus.,* 204 F.3d 326 (2d Cir.2000); *Yaba v. Cadwalader, Wickersham & Taft,* 931 F.Supp. 271, 274 (S.D.N.Y.1996) (Koeltl, D.J.); *Prudential Ins. Co. v. BMC Indus.,* 655 F.Supp. 710, 711 (S.D.N.Y.1987) (Sweet, D.J.); *see generally Dluhos v. Floating & Abandoned Vessel Known as "New York", supra,* 162 F.3d at 69–70. The party opposing the amendment has the burden of demonstrating that a proposed amendment would be futile. *Staskowski v. Cnty. of Nassau,* 05 Civ. 5984(SJF)(WDW), 2007 WL 4198341 at *4 (E.D.N.Y. Nov. 21, 2007); *see also Lugosch v. Congel,* No. 00 Civ. 784(RFT), 2002 WL 1001003 at *1 (N.D.N.Y. May 14, 2002).

2012 WL 3831535

**\*2** A proposed amendment may be denied as futile "where the claim or defense proposed to be added has no colorable merit." *Oliver v. DeMarinis & Co.,* 90 Civ. 7950(SS), 1993 WL 33421 at \*2 (S.D.N.Y. Jan. 29, 1993) (Lee, M.J.) (inner quotations omitted); *see also Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 783 (2d Cir.1984) (if the movant has "colorable grounds for relief," justice requires that leave to amend be granted in the absence of undue delay, bad faith, or prejudice). The " 'colorable grounds' requirement mandates that a district court may not deny a motion for leave to amend a pleading [on futility grounds] when said pleading is sufficient to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *Children First Found. Inc. v. Martinez,* No. 04 Civ. 0927(NPM), 2007 WL 4618524 at \*5 (N.D.N.Y. Dec.27, 2007), *citing in part Kassner v. 2nd Ave. Delicatessen, Inc.,* 496 F.3d 229, 244 (2d Cir.2007); *see also Estate of Ratcliffe v. Pradera Realty Co.,* 05 Civ. 10272(JFK), 2007 WL 3084977 at \*4 (S.D.N.Y. Oct. 19, 2007) (Keenan, D.J.); *Journal Publ'g Co. v. Am. Home Assur. Co.,* 771 F.Supp. 632, 635 (S.D.N.Y.1991) (Leisure, D.J.); *Prudential Ins. Co. v. BMC Indus., Inc., supra,* 655 F.Supp. at 711. In assessing the claimed futility of a proposed amended pleading, the court must assume the truth of the factual allegations set forth in the proposed amended pleading. *Edwards v. City of N.Y.,* 07–CV–5286 (CPS)(RML), 2009 WL 1910740 at \*1 (E.D.N.Y. June 29, 2009); *Da Cruz v. Towmasters of N.J.,* 217 F.R.D. 126, 128 n.l (E.D.N.Y.2003); *Binder v. Nat'l Life of Vt.,* 02 Civ. 6411 (GEL), 2003 WL 21180417 at \*2 (S.D.N.Y. May 20, 2003) (Lynch, then D.J., Cir. J.); *Gabourel v. Bouchard Transp. Co.,* 901 F.Supp. 142, 144 (S.D.N.Y.1995) (Chin, then D.J., now Cir. J.).

In evaluating a motion under Rule 12(b)(6) and Rule 12(c), the court must determine whether the plaintiff has alleged any facially plausible claims. *See Virgil v. Town of Gates,* 455 F. App'x 36, 37 (2d Cir.2012); *Smith v. NYCHA,* 410 F. App'x 404, 405–06 (2d Cir.2011). A claim is plausible when its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citations omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement

to relief." *Ashcroft v. Iqbal, supra,* 556 U.S. at 696 (internal quotations omitted). Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Ashcroft v. Iqbal, supra,* 556 U.S. at 679, *quoting* Fed.R.Civ.P. 8(a)(2).

**\*3** The Court of Appeals has also repeatedly noted that the trial court has broad discretion in ruling on a motion to amend. *See,* e.g., *Gurary v. Winehouse,* 235 F.3d 792, 801 (2d Cir.2000); *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel,* 145 F.3d 85, 89 (2d Cir.1998); *Guzman v. Bevona,* 90 F.3d 641, 649 (2d Cir.1996); *see generally Grace v. Rosenstock,* 228 F.3d 40, 53–54 (2d Cir.2000).

### B. Application

Plaintiffs seek to amend their complaint to add a claim for tortious interference with contractual relations.

Under New York law, in order to state a claim for tortious interference with contractual relations, a plaintiff must allege: "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *Kirch v. Liberty Media Corp.,* 449 F.3d 388, 401–02 (2d Cir.2006), *quoting Lama Holding Co. v. Smith Barney Inc.,* 88 N.Y.2d 413, 424, 668 N.E.2d 1370, 1375, 646 N.Y.S.2d 76, 82 (1996); *White Plains Coat & Apron Co. v. Cintas Corp.,* 8 N.Y.3d 422, 426, 867 N.E.2d 381, 383, 835 N.Y.S.2d 530, 532 (2007).

Here, the proposed amendment alleges, in substance, that Chanelia and Max Impact entered into a licensing agreement which provided, *inter alia,* that (1) "[i]n the event of any legal proceeding brought by or against Max Impact or Chanelia in respect to the [Rollabana] Patents, Max Impact or Chanelia may cause Max Impact, Chanelia or Argo [Development & Production LTD. ("Argo"), the patentee,] to be joined and [Max] Impact, Chanelia or Argo hereby consent to such joinder in and [will] reasonably cooperate with respect to such proceeding to the extent necessary to initiate and maintain it (including, without limitation, by providing relevant documents, witnesses and testimony)," (2) Argo and its principal, Moshe Harel, agreed to the licensing agreement

between Chanelia and Max Impact in a letter agreement which was incorporated by reference in the licensing agreement, (3) defendant was aware of these agreements, (4) pursuant to an order of the Honorable Lawrence M. McKenna, United States District Judge, dated April 30, 2012 (Docket Item 58), Max Impact was directed to join Chanelia and Argo as plaintiffs in order to obtain standing to sue on its patent claim and those parties were so joined (Docket Item 77), (5) defendant executed "a series of deliberate actions intended to intrude upon and interfere with Max Impact's relations with Argo, and to induce Argo to breach its contractual obligation[s]," (6) Argo has withdrawn from this action, and (7) plaintiffs have been damaged by defendant's interference (Exhibit 5 to Turcotte Decl. at ¶¶ 58–73).

Defendant opposes plaintiffs' motion arguing that, while "[p]laintiff alleged that [defendant] intentionally induced Argo to withdraw from this case[, this] is clearly not the case" because (1) Max Impact was in fact the impetus for Argo's withdrawal, (2) "Argo retained independent counsel to ensure [it] made an informed decision regarding withdrawal," and (3) the contract between Max Impact and Argo was no longer operative at the time of the so-called interference by defendant because Max Impact breached the contract by failing to pay Argo royalties (Sherwood's Reply Memorandum, filed Nov. 21, 2011 (Docket Item 126) at 5–6).

**\*4** Defendant's arguments are unavailing. All of defendant's arguments go to the merits of plaintiffs' proposed additional claim, rather than the sufficiency of the proposed allegations. Moreover, defendants arguments rely completely on information outside of the pleadings. Such extrinsic material is, generally, not properly considered on a motion to amend. As with

a motion to dismiss under Fed.R.Civ.P. 12(b)(6), *see Hayden v. Cnty. of Nassau,* 180 F.3d 42, 54 (2d Cir.1999), in making futility determinations, the court must limit itself to the allegations in the complaint, as well as to any documents attached to the complaint as exhibits or incorporated by reference. *See Journal Publ'q Co. v. Am. Home Assurance Co., supra,* 771 F.Supp. at 635 ("Defendants' contention that the proposed amendments are futile is based largely on factual arguments going to the merits of plaintiffs' claims.... [I]t is axiomatic that a court may not look beyond the face of the complaint on a motion to dismiss for failure to state a claim."); *accord Permatex, Inc. v. Loctite Corp.,* 03 Civ. 943(LAK)(GWG), 2004 WL 1354253 at \*3 (S.D.N.Y. June 17, 2004) (explaining that "materials outside of the pleadings ... cannot be considered on a motion for leave to amend").

Because plaintiffs' proposed additional allegations, on their face, state a colorable claim for tortious interference with contractual relations and because defendant has failed to show that such an amendment would be futile or should otherwise be denied, plaintiffs' motion to amend is granted.

## III. *Conclusion*

Accordingly, for all the foregoing reasons, plaintiffs motion to amend their complaint (Docket Item 123) is granted in its entirety.

SO ORDERED.

## All Citations

Not Reported in F.Supp.2d, 2012 WL 3831535

---

    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2017 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:14-cv-01172-GTS-TWD Document 28 Filed 12/15/17 Page 47 of 54

Myers v. Wollowitz, Not Reported in F.Supp. (1995)

1995 WL 236245

1995 WL 236245
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

James N. MYERS, Jr., Plaintiff,
v.
Heather WOLLOWITZ, Attorney, Defendant.

No. 95–CV–0272 (TJM) (RWS).
|
April 10, 1995.

**Attorneys and Law Firms**

James N. Myers, Jr., Troy, NY, pro se.

*DECISION AND ORDER*

McAVOY, Chief Judge.

*I. Background*

**\*1** Presently before this Court is the above-captioned plaintiff's application to proceed in forma pauperis and civil rights complaint. Plaintiff has not paid the partial filing fee required to maintain this action.

For the reasons stated below, plaintiff's complaint is dismissed pursuant to 28 U.S.C. § 1915(d) and Local Rule 5.4(a) of the General Rules of this Court as without arguable basis in law.

In his *pro se* complaint, plaintiff seems to claim that plaintiff was represented by defendant Wollowitz, a public defender for the County of Rensselaer, in a County Court proceeding. Plaintiff alleges that after a criminal proceeding in that Court, plaintiff was "sentenced to a illegal sentence." *Id.* at 2. Plaintiff contends that due to the ineffective assistance of his counsel, defendant Wollowitz, his constitutional rights were violated. For a more complete statement of plaintiff's claims, reference is made to the entire complaint filed herein.

*II. Discussion*

Consideration of whether a *pro se* plaintiff should be permitted to proceed in forma pauperis is a two-step process. First, the court must determine whether the plaintiff's economic status warrants waiver of fees and costs under 28 U.S.C. § 1915(a). If the plaintiff qualifies by economic status, the court must then consider whether the cause of action stated in the complaint is frivolous or malicious. *Moreman v. Douglas,* 848 F.Supp. 332, 333 (N.D.N.Y.1994) (Scullin, J.); *Potnick v. Eastern State Hosp.,* 701 F.2d 243, 244 (2d Cir.1983) (per curiam).

In the present case, upon review of the plaintiff's inmate account statements, the Court has determined that plaintiff's financial status qualifies him to file or "commence" this action in forma pauperis. 28 U.S.C. § 1915(a). Turning to the second inquiry, a court may "dismiss the proceeding under 28 U.S.C. § 1915(d) if the court thereafter determines that ... the action is frivolous or malicious." *Moreman,* 848 F.Supp. at 333 (citation omitted).

In determining whether an action is frivolous, the court must look to see whether the complaint lacks an arguable basis either in law or in fact. *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). Although the court has the duty to show liberality towards *pro se* litigants, *Nance v. Kelly,* 912 F.2d 605, 606 (2d Cir.1990) (per curiam), and extreme caution should be exercised in ordering sua sponte dismissal of a *pro se* complaint before the adverse party has been served and the parties have had an opportunity to respond, *Anderson v. Coughlin,* 700 F.2d 37, 41 (2d Cir.1983), there is a responsibility on the court to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action in forma pauperis. Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915(d) is appropriate to prevent abuses of the process of the court, *Harkins v. Eldredge,* 505 F.2d 802, 804 (8th Cir.1974), as well as to discourage the waste of judicial resources. *Neitzke,* 490 U.S. at 327. *See generally Moreman,* 848 F.Supp. at 334.

**\*2** 42 U.S.C. § 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights. *See, e.g., Von Ritter v. Heald,* 91–CV–612, 1994 WL 688306, \*3, 1994 U.S.Dist. LEXIS 17698, \*8–9 (N.D.N.Y. Nov. 14, 1994) (McAvoy, C.J.). A party may not be held liable under this section unless it can be established that the defendant has acted under the color of state law. *See, e.g., Rounseville v. Zahl,* 13 F.3d 625, 628 (2d Cir.1994) (noting state action requirement under § 1983); *Wise v. Battistoni,* 92–Civ–4288, 1992 WL 380914, \*1, 1992 U.S.Dist. LEXIS 18864, \*2–3 (S.D.N.Y. Dec. 10, 1992) (same) (citations omitted).

1995 WL 236245

In the present case, the sole defendant named by plaintiff is the Rensselaer County public defender who apparently represented plaintiff in the criminal proceeding discussed in his complaint. *See* Complaint at 2. However, "[i]t is well settled that an attorney's representation of a party to a court proceeding does not satisfy the Section 1983 requirement that the defendant is alleged to have acted under color of state law...." *Wise,* 1992 WL 380914 at *1, 1992 U.S.Dist. LEXIS 18864 at *2–3; *see also D'Ottavio v. Depetris,* 91–Civ–6133, 1991 WL 206278, *1, 1991 U.S.Dist. LEXIS 13526, *1–2 (S.D.N.Y. Sept. 26, 1991).

Since the plaintiff has not alleged any state action with respect to the Section 1983 claim presently before the Court, plaintiff's complaint, as presented to this Court, cannot be supported by any arguable basis in law and must therefore be dismissed pursuant to 28 U.S.C. § 1915(d). *Neitzke,* 490 U.S. at 328.

Accordingly, it is hereby

ORDERED, that leave to proceed or prosecute this action in forma pauperis is denied, and it is further

ORDERED, that this action is dismissed pursuant to 28 U.S.C. § 1915(d) and Local Rule 5.4(a) of the General Rules of this Court as lacking any arguable basis in law, and it is further

ORDERED, that the Clerk serve a copy of this Order on the plaintiff by regular mail.

I further certify that any appeal from this matter would not be taken in good faith pursuant to 28 U.S.C. § 1915(a).

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1995 WL 236245

---

**End of Document**    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 5420985
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Maurice WILLIAMS, Plaintiff,

v.

WELLNESS MEDICAL CARE,
P.C., et al., Defendants.

No. 11–CV–5566 (KMK).
|
Sept. 27, 2013.

**Attorneys and Law Firms**

Maurice Williams, Mount Vernon, NY, pro se.

William G. Scher, Esq., Garbarini & Scher, P.C., New York, NY, for Defendant.

*OPINION AND ORDER*

KENNETH M. KARAS, District Judge.

**\*1** Plaintiff Maurice Williams, proceeding pro se, brings this action against Wellness Medical Care, P.C. ("WMC") and several of its officers (collectively, "Defendants"). The Court construes Plaintiff's claims to arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), for unequal terms of employment and unlawful termination. Presently before this Court is Defendants' Motion To Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons given below, Defendants' Motion is granted.

*I. Background*

*A. Factual Background*

Plaintiff's Complaint and accompanying documents can be read to allege the following facts. [1] From on or about May 4, 2009, through on or about June 9, 2009, Plaintiff participated in an unpaid internship (or externship) with Defendants. (Compl.¶ 8.(Dkt. No. 2).) [2] He states that his internship was supposed to be for medical billing and coding, but he was instead trained as a "bookkeeper" by Ms. Teresa Smith, and as such he "did not get the proper training ... in order ... to work at [WMC]." (Letter from M. Williams to Court (Aug. 31, 2012) ("Aug. 31 Letter") (Dkt. No. 22).) Plaintiff also asserts that other interns, who did not have the same credentials, were ultimately hired at WMC and were paid more than he was. (*Id.*) He further states that at some time during this internship period, Defendant Christine Sapka ("Sapka") "signed off on [his] evaluation with all proficiency." (*Id.*)

Plaintiff claims that, following the internship, he worked for Defendants as a paid employee from June 9 through June 19, 2009, during which period he was "underpaid at a rate of ___ dollars an hour." [3] (Comp.¶ 8.) He also states that at the end of one of his weeks of paid employment, Defendants deducted fifty dollars from his salary for tax purposes. (Aug. 31 Letter.) Plaintiff states that he separately worked for Defendants for a single day as a marketing assistant, promoting Wellness by "Upper Echelon Management" at a Business Expo held on October 15, 2009. (Compl.¶ 8.) Plaintiff claims that he was not paid for this day of work. (*Id.* ¶ 9; *see also* Aug. 31 Letter ("I also worked for [Defendants] during the Business Expo ... and have not been paid for that day.").)

Although the precise sequence of events is not entirely clear, Plaintiff claims that, at some point, he "challenged" Defendants to "hire [him] at a salary." (Compl.¶ 8.) But, Plaintiff claims, Defendants instead terminated several employees, including Plaintiff, in early 2009, "under the guise that the economy was worsening." (*Id.*) Plaintiff alleges that his termination came without warning, (*id.* ¶ 9), and he asserts that he "believe[s] that the discharge was a result of racial discrimination against Afro–American Males." (*Id.* ¶ 10.) At the time of his termination, Plaintiff had received his certification in Billing and Coding from Stanford Brown Academy. (*Id.* ¶ 9; *see also* August 31 Letter ("Dr. Christine Sapka signed off on my evaluation [as a medical biller] with all proficiency.").) Defendants include WMC itself as well as Sapka, the Chief Medical Officer and a member of "Upper Echelon Management" of WMC, and Marc Domecello ("Domecello"), Office Manager and Chief Administrative Officer of the non-medical functions of WMC, and a member of "Upper Echelon Management." (Comp.¶¶ 3, 4.) According to Plaintiff, Sapka and Domecello had supervisory responsibilities over Plaintiff during his internship and employment. (*Id.* ¶ 6.)

### B. Procedural History

**\*2** The Court held a premotion conference on December 6, 2012, at which the Court set a schedule for Defendants to file a Motion To Dismiss. (*See* Dkt. No. 6.) Defendants filed the instant Motion under Federal Rule of Civil Procedure 12(b)(6) in accordance with that schedule. Plaintiff did not file a response to Defendants' Motion. However, "the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *McCall v. Pataki,* 232 F.3d 321, 322–23 (2d Cir.2000) (affirming a judgment granting an unopposed motion to dismiss); *see also Goldberg v. Danaher,* 599 F.3d 181, 183–84 (2d Cir.2010) (noting that a district court is "equipped to make a determination on the merits" when considering an unopposed motion to dismiss). The Court has therefore carefully considered the unanswered Motion and the attached Memorandum of Law, *see Johnson v. Agros,* No. 10–CV–8312, 2012 WL 3564028, at \*2 (S.D.N.Y. Aug.20, 2012) (considering the merits of an unopposed motion to dismiss), and grants Defendants' Motion for the reasons stated herein.

## II. Discussion

### A. Standard of Review

Because Plaintiff is proceeding pro se, the Court must construe his pleadings liberally and "interpret them to raise the strongest arguments that they suggest." *Maisonet v. Metro. Hosp. & Health Hosp. Corp.,* 640 F.Supp.2d 345, 347 (S.D.N.Y.2009) (internal quotation marks omitted); *see also Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474–75 (2d Cir.2006). This admonition "applies with particular force when a plaintiff's civil rights are at issue." *Maisonet,* 640 F.Supp.2d at 348; *see also McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004). But the liberal treatment afforded to pro se litigants does not exempt a pro se party "from compliance with relevant rules of procedural and substantive law." *Maisonet,* 640 F.Supp.2d at 348 (internal quotation marks omitted).

In considering Defendants' Motions To Dismiss, the Court is required to construe the factual allegations contained in the Complaint as true. *See Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir.2008) ("We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." (internal quotation marks omitted)); *Gonzalez v. Caballero,* 572 F.Supp.2d 463, 466 (S.D.N.Y.2008) (same). Moreover, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.,* 199 F.3d 99, 107 (2d Cir.1999) (internal quotation marks omitted). Because Plaintiff is proceeding pro se, the Court may also consider the information contained in Plaintiff's letters to the Court. *See Salvatierra v. Connolly,* No. 09–CV–3722, 2010 WL 5480756, at \*25 n. 3 (S.D.N.Y. Sept. 1, 2010); *see also Frith v. Hill,* No. 07–CV–5899, 2009 WL 3073716, at \*19 n. 1 (S.D.N.Y. Sept.23, 2009).

**\*3** The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (third alteration in original) (citations omitted). Instead, the Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.,* and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563. Plaintiffs must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. But if a plaintiff has "not nudged [his or her] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.; see also Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ( "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " (alteration in original) (citation omitted) (quoting Fed.R.Civ.P. 8(a)(2))).

As noted, the Court construes the Complaint to assert discrimination claims under Title VII.[4] To make out

such a claim, Plaintiff must ultimately make out a so-called prima facie case of discrimination—i.e., he must show that "he (1) is a member of a protected class; (2) was performing his duties satisfactorily; (3) was discharged; and that (4) his discharge occurred under circumstances giving rise to an inference of discrimination on the basis of his membership in the protected class." See Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir.2000); Risco v. McHugh, 868 F.Supp.2d 75, 98–99 (S.D.N.Y.2012) ("[I]n order to state a prima facie case for discrimination, a plaintiff must proffer some admissible evidence of circumstances that would be sufficient to permit an inference of discriminatory motive, and cannot meet its burden through reliance on unsupported assertions." (internal quotation marks omitted)). To survive a motion to dismiss, however, a plaintiff need not allege facts in the complaint sufficient to establish a prima facie case. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) ("In employment discrimination cases, a plaintiff is not required to establish a prima facie case at the pleadings stage."); Barbosa v. Continuum Health Partners, Inc., 716 F.Supp.2d 210, 215 (S.D.N.Y.2010) ("Reconciling Swierkiewicz, Twombly, and Iqbal, a complaint need not establish a prima facie case of employment discrimination to survive a motion to dismiss; however, the claim must be facially plausible and must give fair notice to the defendants of the basis of the claim." (internal quotation marks omitted)). "Instead, the complaint [must] contain only enough facts to state a plausible claim that also gives fair notice to the defendant of the basis for each claim," Bakeer v. Nippon Cargo Airlines, Co., Ltd., Nos. 09–CV–3374, 09–CV–3375, 09–CV–3377, 09–CV–3378, 2011 WL 3625103, at *22 (E.D.N.Y. July 25, 2011), adopted by 2011 WL 3625083 (S.D.N.Y. Aug.12, 2011), but a court may "consider the elements of a prima facie case in determining whether there is sufficient factual matter in the Complaint" to give such notice to defendants, Doner–Hendrick v. N.Y. Inst. of Tech., No. 11–CV–121, 2011 WL 2652460, at *8 (S.D.N.Y. July 6, 2011).

**B. Analysis**

*4 Plaintiff's Complaint and other submissions to the Court can be construed to raise Title VII claims for unequal terms of employment and unlawful termination —both based on Plaintiff's race. Defendants argue that the Complaint is not timely, and that Plaintiff has failed to plead sufficient facts. The Court considers these arguments in turn.

*1. Timeliness*

Under Title VII, a claimant must file a timely charge with the Equal Employment Opportunity Commission ("the EEOC") and "obtain a right-to-sue letter" before filing suit in federal court. See Legnani v. Alitalia Linee Aeree Italiane, S.P.A., 274 F.3d 683, 686 (2d Cir.2001). The EEOC complaint must be filed within 180 days of the occurrence of the alleged discriminatory conduct. See 42 U.S.C.2000e–5(e)(1); see also Khadaroo v. N.Y. Presbyterian Hosp., No. 10–CV–1237, 2012 WL 893180, at *3 (S.D.N.Y. Mar. 15, 2012) ("When a plaintiff elects to file his [or her] complaint with the EEOC, he [or she] has 180 days to do so from the date of the alleged discrimination."). This deadline functions as a "statute of limitations and a failure to timely file a charge acts as a bar to a plaintiff's action." Kubicek v. Westchester County, No. 08–CV–0372, 2009 WL3720155 at *4 (S.D.N.Y. Oct. 8, 2009) (internal quotation marks omitted); see also Zipes v. Trans World Airlines, Inc., 45 U.S. 385, 393 (1982) ("We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling"). The complainant must allow the EEOC 180 days from filing of the charge to investigate before the complainant can bring a private Title VII action. See 42 U.S.C. § 2000e–5(f) (1); see also Milne v. Navigant Consulting, No. 08–CV–8964, 2009 WL 4437412 at *13 (S.D.N.Y. Nov. 30, 2009) ("Under Title VII, a complainant is entitled to a Right to Sue letter after 180 days have passed if the EEOC has failed to enter a conciliation agreement."). For race-based discrimination claims, claimants have ninety days from receipt of the right to sue letter to file suit in federal court. See 42 U.S.C. § 2000e–5(f)(1). To evaluate whether a suit is filed on time, "a court may assume a right to sue letter was mailed on the date shown on the document," and was received three days thereafter. Barbosa v. Continuum Health Partners, Inc., 716 F.Supp.2d. 210, 215 (S.D.N.Y.2010). This ninety-day filing requirement also functions as a statute of limitations. See id. at 216 ("While the ninety-day filing requirement is akin to a statute of limitations ... it is subject to the doctrine of equitable tolling."); see also Vollinger v. Merrill Lynch & Co., Inc., 198 F.Supp.2d. 433, 440 (S.D.N.Y.2000) ("The court realizes that the ninety-day filing requirement is akin to a statute of limitations and is subject to waiver, equitable estoppel, and equitable tolling.").

**\*5** Here, the EEOC right to sue letter was issued on May 4, 2011, (*See* Not. of Motion, Ex. 2 (Notice of Right to Sue)), and the Court accordingly presumes that Plaintiff received it on May 7, 2011. Plaintiff filed the Complaint with this Court on July 20, 2011—seventy-four days after receipt. In other words, Plaintiff's filing satisfied the ninety-day filing requirement for filing a federal suit. Defendants' Motion does not specify where the alleged timeliness problem occurs. Perhaps Defendants read the EEOC right to sue letter as dismissing Plaintiff's EEOC charge as untimely. But the right to sue letter actually demonstrates merely that Plaintiff waited the requisite 180-day period, that the EEOC terminated the charge, and that Plaintiff was therefore entitled to file a this action.[5]

In short, because there is nothing demonstrating that either the EEOC charge or the Complaint was filed in an untimely manner, Defendants' Motion To Dismiss the Complaint as untimely is denied.

### 2. Sufficiency of the Allegations

As noted, to establish a prima facie case of racial discrimination under Title VII, a plaintiff must show that: "(1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) that action occurred under circumstances giving rise to an inference of discriminatory intent." *Maisonet,* 640 F.Supp.2d at 348. In evaluating Defendants' Motion To Dismiss, the Court must, considering these factors, determine whether Plaintiff has offered "enough facts to state a plausible claim that also gives fair notice to the defendant of the basis for each claim." *Bakeer,* 2011 WL 3625103, at \*22. A plaintiff can "raise a plausible inference of discrimination by alleging 'preferential treatment given to similarly situated individuals' " as long as those individuals are " 'similarly situated in all material respects.' " *Anderson v. Davis Polk & Wardwell LLP,* 850 F.Supp.2d 392, 407 (S.D.N.Y.2012) (quoting *Sank v. City Univ. of N.Y.,* No. 10–CV–4975, 2011 WL 5120668, at \*11 (S.D.N.Y. Oct.28, 2011)); *see also Perry v. State of N.Y. Dep't of Labor,* No. 08–CV–4610, 2009 WL 2575713, at \*2 (S.D.N.Y. Aug. 20, 2009) ("Allegations supporting motive may include preferential treatment given to similarly situated individuals or remarks that convey discriminatory animus. In the absence of such allegations, dismissal at the pleading stage

is warranted." (citation omitted)), *aff'd,* 398 F. App'x 628 (2d Cir.2010). But a plaintiff must offer specific factual allegations to survive a motion to dismiss attack; conclusory or speculative allegations do not suffice. *See Gertskis v. U.S. EEOC,* No. 11–CV–5830, 2013 WL 1148924, at \*8 (S.D.N.Y. Mar.20, 2013) (collecting authority for the proposition that plaintiff's Title VII claims failed, because they were "conclusory and devoid of factual content creating a plausible inference of any discriminatory conduct"); *Anderson,* 850 F.Supp.2d at 412 (dismissing Title VII claim supported by "nothing more than speculation"); *Dean v. Westchester Cnty. Dist. Attorney's Office,* 119 F.Supp.2d 424, 430 (S.D.N.Y.2000) (dismissing Title VII claim where plaintiff made only "general, conclusory allegations" that "fail[ed] to create an inference of discrimination").

**\*6** Plaintiff asserts two types of adverse action: that he was terminated, and that he was underpaid relative to his peers before his termination. (Compl. ¶ 8.) Plaintiff's statement that "the discharge was a result of racial discrimination against Afro–American Males," effectively yields that Plaintiff is an African–American man, and therefore a member of a protected class. (Comp. ¶ 10.) Construed liberally, the Complaint also satisfies that Plaintiff was "qualified for the position," from which he was terminated, insofar as he had "completed a prerequisite training program to become a Medical Biller," and was "certified as in Billing and Coding from Stanford Brown Academy." (Comp.¶ 9.) And Plaintiff alleges—which allegation the Court must accept as true —that he was terminated from employment. But beyond these showings, Plaintiff's Complaint offers, at best, only conclusory and speculative allegations regarding Defendants' motive; it therefore lacks sufficient facts to establish a plausible claim under Title VII.

Indeed, Plaintiff offers *no* facts and cites *no* incidents that would support an inference of discrimination. Plaintiff claims that he was getting paid less than less qualified interns in his position, but he offers no allegations as to the identity of these other interns, their race, their credentials, or their compensation. (*See* August 31 Letter.) Plaintiff also asserts that several other individuals were terminated —similarly, without any description of their positions, their race, their credentials, or their compensation. (*See* Compl. ¶ 8.) Because of these omissions, the Court cannot determine whether these other employees and interns

WESTLAW  © 2017 Thomson Reuters. No claim to original U.S. Government Works.

were similarly situated, such that discrimination could be inferred.

The Complaint is otherwise devoid of relevant facts. Plaintiff does not offer *any* allegations regarding his compensation and position relative to his co-workers' compensation and position. Nor is there any indication of how many hours Plaintiff worked during the period of paid employment compared to the "other interns." Instead, Plaintiff relies on only his *belief* that Defendants were motivated by racial animus. But without sufficient facts, even the most sincerely held beliefs do not comprise a sufficient basis for withstanding a 12(b)(6) attack. *See Gertskis,* 2013 WL 1148924, at *8 (dismissing Title VII claim that was "conclusory and devoid of factual content creating a plausible inference of any discriminatory conduct"); *Anderson,* 850 F.Supp.2d at 412 (dismissing Title VII claim supported by "nothing more than speculation"); *Dean,* 119 F.Supp.2d at 430 (dismissing Title VII claim where plaintiff made only "general, conclusory allegations" that "fail[ed] to create an inference of discrimination").[6]

However, Plaintiff is granted leave to amend the Complaint to address these deficiencies. *See Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988) ("[I]t will generally be an abuse of discretion to deny leave to amend when dismissing a nonfrivolous original complaint on the sole ground that it does not constitute the short and plain statement required by Rule 8."); *Owens v. N.Y.C. Dep't of Sanitation,* No. 11–CV–8297, 2013 WL 150245, at *3 (S.D.N.Y. Jan. 15, 2013) (noting that, in general, "a court should grant leave to amend [to a pro se litigant] at least once before dismissing [a complaint] with prejudice"); *Ogunbayo v. Montego Med. Consulting,* Nos. 11–CV–4047, 12–CV–0428, 2012 WL 6625921, at *7 (E.D.N.Y. Dec. 19, 2012) (adopting magistrate judge's recommendation that "[p]laintiff, proceeding pro se, should be afforded an opportunity to amend the [dismissed] [c]omplaint"). But if Plaintiff intends to file an Amended Complaint, he must do so by Monday, October 28, 2013.

\*7 Moreover, because Plaintiff failed to respond to Defendants Motion To Dismiss according to the Court's schedule, the Court also reminds Plaintiff that it possesses

the authority to dismiss a case for failure to prosecute. *See* Fed.R.Civ.P. 41(b). Rule 41(b) of the Federal Rules of Civil Procedure provides that a case may be involuntarily dismissed if a plaintiff "fails to prosecute or to comply with these rules or a court order." *Id.* Although Rule 41(b) expressly addresses a situation in which a defendant moves to dismiss for failure to prosecute, it has long been recognized that a district court has the inherent authority to dismiss for failure to prosecute sua sponte. *See LeSane v. Hall's Sec. Analyst, Inc.,* 239 F.3d 206, 209 (2d Cir.2001) (citing *Link v. Wabash R.R. Co.,* 370 U.S. 626, 630, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)). While dismissal under Rule 41(b) is subject to the sound discretion of the district courts, *see U.S. ex rel. Drake v. Norden Sys., Inc.,* 375 F.3d 248, 250–51 (2d Cir.2004), the Second Circuit has stated that a Rule 41(b) dismissal is a " 'harsh remedy to be utilized only in extreme conditions,' " *see LeSane,* 239 F.3d at 209 (quoting *Theilman v. Rutland Hosp., Inc.,* 455 F.2d 853, 855 (2d Cir.1972)). The Second Circuit has further cautioned that "pro se plaintiffs should be granted special leniency regarding procedural matters." *LeSane,* 239 F.3d at 209 (citing *Lucas v. Miles,* 84 F.3d 532, 535 (2d Cir.1996)). "However, even pro se litigants must prosecute claims diligently, and dismissal with prejudice is warranted where the Court gives warning." *Jacobs v. Cnty. of Westchester,* No. 99–CV–4976, 2008 WL 199469, at *4 (S.D.N.Y. Jan.22, 2008). Plaintiff's failure timely to file an Amended Complaint may result in dismissal with prejudice pursuant to Federal Rule 41(b).

### III. Conclusion

For the reasons stated herein, Defendants' Motion To Dismiss is granted. Plaintiff's Complaint is dismissed without prejudice. Plaintiff has until October 28, 2013, to file an amended complaint. The Clerk of Court is respectfully directed to terminate the pending motion. (Dkt. No. 32.)

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 5420985

Footnotes

1    Because Plaintiff is proceeding pro se, the Court is obligated to construe his pleadings liberally to raise the strongest arguments that they suggest. *See Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474–75 (2d Cir.2006) (per curiam). Moreover, because the pleadings of pro se defendants must be construed liberally, the Court may "consider factual allegations in the plaintiff's opposition papers to supplement the allegations in the complaint." *Salvatierra v. Connolly,* No. 09–CV–3722, 2010 WL 5480756 at *25 n. 3 (S.D.N.Y. Sept. 1, 2010) (internal quotation marks omitted)), *adopted by* 2011 WL 9398 (S.D.N.Y. Jan.3, 2011).

2    Plaintiff appears to use "internship" and "externship" interchangeably. The Court will refer to this period of Plaintiff's training as his internship.

3    The blank space is not a typo; rather, the hourly rate is left blank in the Complaint.

4    The Court notes that Plaintiff's Complaint also makes reference to the Fair Labor Standards Act ("FLSA") and to contract law. (*See* Compl. ¶ ¶ 5–6, 8, 10–12.) However, Plaintiff has tendered no allegations to support any FLSA claim and offers no details about any employment contract. There also is a passing reference to age discrimination, but this is unaccompanied by *any* supporting allegations about Plaintiff's age or the basis to assert an age discrimination claim. (*See* Compl. ¶ 12.)

5    It is true that the letter contains no explanation as to why the EEOC terminated Plaintiff's charge. But that omission cannot be a basis for finding the charge untimely. And the record is otherwise devoid of information as to when Plaintiff originally filed the charge with the EEOC.

6    To the extent that Plaintiff's Complaint can also be alleged to state claims under state law, the Court declines to exercise supplemental jurisdiction, given the dismissal of Plaintiff's Title VII claim. *See N.Y. Mercantile Exchange, Inc. v. Intercontinentalexchange, Inc.,* 497 F.3d 109, 119 (2d Cir.2007) ("We find that the district court acted well within the bounds of its discretion. In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." (internal quotation marks omitted)).

---

**End of Document**                                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2017 Thomson Reuters. No claim to original U.S. Government Works.    6